UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BOYAN DONG, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>CLOOPEN GROUP HOLDING LIMITED, *et al.*,<br><br>Defendants. | Civil Action No. 1:21-cv-10610-JGK<br><br><u>CLASS ACTION</u> |

**MEMORANDUM OF LAW IN SUPPORT OF MOVANT
IVAN KAM'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF
<u>AND APPROVAL OF SELECTION OF COUNSEL</u>**

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ........................................................................................................... 1

II. SUMMARY OF THE COMPLAINT ............................................................................. 2

III. ARGUMENT .................................................................................................................. 4

    A. Kam Should Be Appointed Lead Plaintiff ............................................................. 4

        1. Kam's Motion is Timely ................................................................................ 5

        2. Kam Possesses the Largest Financial Interest ............................................... 5

        3. Kam Otherwise Satisfies Rule 23 .................................................................. 6

    B. Kam's Selection of Counsel Should Be Approved ............................................... 7

IV. CONCLUSION ............................................................................................................... 8

## **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Foley v. Transocean Ltd.*,
  272 F.R.D. 126 (S.D.N.Y. 2011) ........................................................................................... 7

*Kasilingam v. Tilray, Inc.*,
  No. 1:20-cv-03459-PAC,
  2020 WL 4530357 (S.D.N.Y. Aug. 6, 2020) ..................................................................... 6, 7

*Teamsters Local Union No. 727 Pension Fund v. Vanda Pharm. Inc.*,
  No. 19 CV 1108 (FB)(LB),
  2019 WL 7287202 (E.D.N.Y. May 24, 2019) ....................................................................... 6

**STATUTES, RULES AND OTHER AUTHORITIES**

15 U.S.C. § 77z-1(a)(3)(A)(i) ........................................................................................................ 4

15 U.S.C. § 77z-1(a)(3)(B)(i) ........................................................................................................ 1

15 U.S.C. § 77z-1(a)(3)(B)(iii) .................................................................................................. 2, 5

15 U.S.C. § 77z-1(a)(3)(B)(iii)(I) .................................................................................................. 5

15 U.S.C. § 77z-1(a)(3)(B)(iii)(I)(cc) ............................................................................................ 6

15 U.S.C. § 77z-1(a)(3)(B)(v) .................................................................................................. 2, 7

15 U.S.C. § 78u-4(a)(3)(A)(i) ........................................................................................................ 4

15 U.S.C. § 78u-4(a)(3)(B)(i) ........................................................................................................ 1

15 U.S.C. § 78u-4(a)(3)(B)(iii) .................................................................................................. 2, 5

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) .................................................................................................. 5

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc) ............................................................................................ 6

15 U.S.C. § 78u-4(a)(3)(B)(v) .................................................................................................. 2, 7

Fed. R. Civ. P. 23 ....................................................................................................................... 6, 7

Movant Ivan Kam ("Kam") respectfully submits this memorandum of law in support of his motion for appointment as lead plaintiff pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 77z-1, *et seq.,* and 15 U.S.C. § 78u-4, *et seq.*, and for approval of his selection of Johnson Fistel, LLP ("Johnson Fistel") as lead counsel for the proposed class (the "Motion").

**I.    INTRODUCTION**

This case is a federal securities class action brought on behalf of a class of all persons who: (a) purchased or otherwise acquired Cloopen Group Holding Limited ("Cloopen" or the "Company") American Depositary Shares ("ADSs") (NYSE: RAAS) pursuant and/or traceable to the registration statement and prospectus (collectively, the "Registration Statement") issued in connection with the Company's February 2021 initial public offering (the "IPO"); and/or (b) purchased or otherwise acquired Cloopen securities between February 9, 2021 and May 10, 2021, inclusive (the "Class").  The complaint charges Cloopen, certain of its executive officers and directors, its underwriters, and others with violations of §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 and Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder, as well as violations §§ 11 and 15 of the Securities Act of 1933.  As such, this action is governed by the PSLRA.

Pursuant to the PSLRA, the Court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." *See* 15 U.S.C. § 77z-1(a)(3)(B)(i); 15 U.S.C. § 78u-4(a)(3)(B)(i).  The Court is to appoint the movant making a timely motion under the PSLRA's sixty-day deadline, who asserts the largest financial interest in the litigation, and who also satisfies the relevant requirements of Rule 23 of the Federal Rules of Civil Procedure.  *See* 15 U.S.C. §

77z-1(a)(3)(B)(iii); 15 U.S.C. § 78u-4(a)(3)(B)(iii). Accordingly, here, Kam should be appointed lead plaintiff because he: (1) timely filed this Motion; (2) has the largest financial interest in the outcome of this litigation; and (3) is typical and will adequately represent the putative class's interests. *See* 15 U.S.C. § 77z-1(a)(3)(B)(iii); 15 U.S.C. § 78u-4(a)(3)(B)(iii).

The PSLRA also vests authority in the lead plaintiff to select and retain lead counsel, subject to court approval. *See* 15 U.S.C. § 77z-1(a)(3)(B)(v); 15 U.S.C. § 78u-4(a)(3)(B)(v). Because Johnson Fistel is a leading securities class action law firm and has earned a reputation for excellence in shareholder rights litigation, the Court should approve Kam's choice of the firm to serve as lead counsel.

## II.   SUMMARY OF THE COMPLAINT

Cloopen claims to be the largest multi-capability cloud-based communications solution provider in China. The Company purportedly is the only Chinese provider that offers a full suite of cloud-based communications solutions covering communications platform as a service, cloud-based contact centers, and cloud-based unified communications and collaborations. Cloopen ADSs trade on the New York Stock Exchange under the ticker symbol "RAAS."

In its February 2021 IPO, Cloopen sold 23 million ADSs at $16 per share, netting approximately $342 million in proceeds. Cloopen's Registration Statement led ADS purchasers to believe that the Company's much-touted growth strategy, which relied upon cross-selling, up-selling, optimizing existing solutions, and developing new features, was effective. Indeed, as portrayed in the Registration Statement, Cloopen appeared to be retaining and even expanding its customer base, as well as maintaining its key sales metrics such as dollar-based net retention rate, which reflected its ability to increase existing customer revenue.

However, Cloopen's representations concerning its successful growth strategy were materially false and misleading. In fact, Cloopen's growth strategy was not working, and its existing customers were abandoning the Company. Unbeknownst to investors, Cloopen's dollar-based net retention rate had plummeted during the fourth quarter of 2020 ("4Q 2020"). In 4Q 2020, the Company's net retention rate had dropped well below the 94.7% rate reported for the nine months ended September 30, 2020. The plunging dollar-based net retention rate caused the Company's fiscal year 2020 retention rate to tumble to 86.8%, down from the Company's fiscal year 2019 retention rate of 102.7%. Cloopen's Registration Statement further failed to disclose that an increasing number of its customers were refusing to pay, forcing the Company to record massive increases in its accounts receivables and allowance for doubtful accounts. The Registration Statement also failed to disclose that Cloopen was weighted down by massive liabilities related to the fair value of certain recently-granted warrants.

On March 26, 2021—just over six weeks after its IPO—Cloopen shocked the market when it published its 4Q 2020 and fiscal year 2020 financial results, which closed on December 31, 2020, more than a month before the IPO. Cloopen reported 4Q 2020 revenues of just $39.6 million, $2 million shy of analysts' consensus, net losses of $46.8 million, representing a staggering 466.9% increase year-over-year, and operating expenses of $27.6 million, representing a 30% increase over 4Q 2019. Cloopen blamed a "change in fair value of warrant liabilities of . . . US$34.4 million" for Cloopen's remarkable net loss and an "increase in the provision for doubtful accounts resulting from increased in accounts receivables" for the 59.2% increase in general and administrative expenses. In response, the price of Cloopen's ADSs fell 18.5%, dropping from $14.42 per on March 25, 2021 to $11.75 per ADS on March 26, 2021.

Yet, even then, Cloopen's most senior officers continued to make materially false and misleading statements to the market and failed to reveal the true extent of Cloopen's troubles. In the Company's March 26, 2021 earnings announcement and investor conference call, its senior executives continued to misrepresent the Company's expansion strategy, again failing to acknowledge that the strategy was failing and its existing customer base was deteriorating. Nor did they disclose that Cloopen's dollar-based net retention rate had tumbled in 4Q 2020. Weeks later, as Cloopen belatedly revealed additional facts about its failed growth strategy and withering customer base, including that its dollar-based net retention rate by year end 2020 fell far below historical periods, Cloopen's share price fell again, closing at $8.97 per ADS on May 12, 2021.

Plaintiff's complaint seeks recovery of the putative class's losses suffered as a result of the materially false and misleading statements in the Registration Statement and otherwise made by Defendants during the Class Period.

## III.   ARGUMENT

### A.   Kam Should Be Appointed Lead Plaintiff

The PSLRA establishes the procedure for the appointment of a lead plaintiff. First, "[n]ot later than twenty (20) days" after the initial complaint is filed, a notice must be published "in a widely circulated national business-oriented publication or wire service" advising members of the purported plaintiff class "of the pendency of the action, the claims asserted therein, and the purported class period" and that no "later than sixty (60) days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff." 15 U.S.C. § 77z-1(a)(3)(A)(i); 15 U.S.C. § 78u-4(a)(3)(A)(i).

Next, the PSLRA provides that the Court shall adopt a presumption that the most adequate plaintiff is the person or group of persons that:

(aa) has either filed the complaint or made a motion in response to a notice . . . ;

(bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and

(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 77z-1(a)(3)(B)(iii); 15 U.S.C. § 78u-4(a)(3)(B)(iii).

Here, Kam meets each of these requirements and should be appointed lead plaintiff and permitted to select lead counsel for the class, subject to Court approval.

### 1. Kam's Motion is Timely

The statutory notice published by Johnson Fistel on December 10, 2021 advised class members of the pendency of the action, the claims asserted therein, the proposed class period, and the right to move the Court to be appointed as lead plaintiff within sixty days, or by February 8, 2022. *See* Declaration of Ralph M. Stone in Support of Movant Ivan Kam's Motion for Appointment as Lead Plaintiff and Approval of Selection of Counsel ("Stone Decl."), filed herewith, Exh. A (PSLRA Press Release).

Because this Motion is being filed on February 8, 2022, it is timely, and Kam is entitled to be considered for appointment as lead plaintiff.

### 2. Kam Possesses the Largest Financial Interest

The PSLRA instructs the Court to adopt a rebuttable presumption that the "most adequate plaintiff" for lead plaintiff purposes is the movant with "the largest financial interest in the relief sought by the class," so long as the movant "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure."  15 U.S.C. § 77z-1(a)(3)(B)(iii)(I); 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

Kam suffered $136,375 in estimated PSLRA losses as a result of purchasing 4,500 Cloopen shares for $175,815 during the Class Period.  *See* Stone Decl., Exh. B (PSLRA Certification) and

Exh. C (Financial Interest Calculation).  Accordingly, Kam has a substantial financial interest in directing this litigation and recovering losses attributable to Defendants' alleged violations of the federal securities laws.  To the best of his counsel's knowledge, there are no other plaintiffs or movants with larger financial interests in this litigation.  Therefore, Kam satisfies the PSLRA's prerequisite of having the largest financial interest.

### 3. Kam Otherwise Satisfies Rule 23

In addition to possessing a significant financial interest, a lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure."  15 U.S.C. § 77z-1(a)(3)(B)(iii)(I)(cc); 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc).  Rule 23 requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class; and [that] the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(3)–(4).  At the lead plaintiff stage, movants are only required to make a *prima facie* showing of typicality and adequacy.  *Teamsters Local Union No. 727 Pension Fund v. Vanda Pharm. Inc.*, No. 19 CV 1108 (FB)(LB), 2019 WL 7287202, at *3 (E.D.N.Y. May 24, 2019); *Kasilingam v. Tilray, Inc.*, No. 1:20-cv-03459-PAC, 2020 WL 4530357, at *2 (S.D.N.Y. Aug. 6, 2020) (only a "preliminary showing of typicality and adequacy" is required).

In determining whether a movant satisfies the "typicality" requirement, courts consider whether its claims arise from the same conduct and same legal theory for the defendants' alleged liability.  *Kasilingam*, 2020 WL 4530357, at *3.  The typicality requirement is satisfied here because Kam seeks the same relief and advances the same legal theories as other class members.  Indeed, like other class members: (i) Kam purchased Cloopen shares during the Class Period; (ii) his purchases were made pursuant and/or traceable to Defendants' false and misleading Registration Statement and were at prices artificially inflated by Defendants' fraud; and (iii) he

was damaged thereby. Kam's claims therefore arise from the same course of events and his legal arguments to prove Defendants' liability are identical to the balance of the class.

The adequacy element of Rule 23 is satisfied where the lead plaintiff can "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). Thus, in evaluating whether Kam satisfies the adequacy requirement, the Court should consider whether he "has selected counsel 'qualified, experienced, and generally able to conduct the litigation,' he has no conflict with the other class members, and his financial interest is sufficient to ensure 'vigorous advocacy.'" *Kasilingam*, 2020 WL 4530357, at *3 (quoting *Foley v. Transocean Ltd.*, 272 F.R.D. 126, 131 (S.D.N.Y. 2011)).

Here, Kam has retained counsel experienced in prosecuting securities class actions under the PSLRA. *See* section III(B), below. Additionally, no antagonism exists between his interests and those of the absent class members. Their interests are squarely aligned. Moreover, Kam has amply demonstrated his adequacy by signing the sworn PSLRA certification and declaration submitted herewith evidencing his willingness to serve as a representative party on behalf of the class, including testifying at deposition or trial, if necessary. *See* Stone Decl., Exh. B (PSLRA Certification) & Exh. D (Declaration of Ivan Kam). Finally, Kam's significant losses in connection with his investments in Cloopen shares ensure that he has the incentive to vigorously pursue the claims against Defendants.

Because Kam has the largest financial interest in the action and has made *a prima facie* showing of typicality and adequacy, he should be appointed lead plaintiff.

### B. Kam's Selection of Lead Counsel Should Be Approved

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to court approval. 15 U.S.C. § 77z-1(a)(3)(B)(v); 15 U.S.C. § 78u-4(a)(3)(B)(v). Kam has selected

Johnson Fistel to serve as lead counsel for the proposed class.

Johnson Fistel, with offices in New York, Georgia, and California, is a leading shareholder rights law firm and has earned a reputation for excellence and innovation in shareholder and complex litigation. The firm and its attorneys have been appointed as lead or co-lead counsel in shareholder litigation in both federal and state courts throughout the country and have successfully litigated numerous such cases on behalf of injured investors. *See* Stone Decl., Exh. E (Johnson Fistel Firm Resume). In fact, courts and clients alike have praised Johnson Fistel and its attorneys for their capabilities in complex cases such as the present case. *Id*. There can be little doubt that as lead counsel, Johnson Fistel's extensive experience and track record of success in complex shareholder litigation like the present case, combined with its client-driven track record, will serve lead plaintiff and the class well.

Thus, the Court can be assured that by approving Kam's choice of Johnson Fistel as lead counsel, the putative class will receive the highest caliber of legal representation.

## IV.   CONCLUSION

Accordingly, Kam respectfully requests that the Court appoint him as Lead Plaintiff and approve his selection of Johnson Fistel as Lead Counsel.

DATED: February 8, 2022

**JOHNSON FISTEL, LLP**

*/s/ Ralph M. Stone*
Ralph M. Stone (RS-4488)
1700 Broadway, 41st Floor
New York, NY 10019
Telephone: (212) 292-5690
Facsimile: (212) 292-5680
RalphS@johnsonfistel.com

- 9 -

        **JOHNSON FISTEL, LLP**
        Michael I. Fistel, Jr.
        40 Powder Springs Street
        Marietta, GA 30064
        Telephone: (470) 632-6000
        Facsimile: (770) 200-3101
        MichaelF@johnsonfistel.com

        *Counsel for Movant Ivan Kam*

## CERTIFICATE OF COMPLIANCE

The undersigned counsel certifies that this document complies with the type-volume limitations of the Individual Practices of Judge John G. Koetlt, II.D, because it contains 2,344 words, as calculated by the word-counting feature of Microsoft Office 2020.

>  */s/Ralph M. Stone*
>  RALPH M. STONE