UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BOYAN DONG, Individually and On Behalf of All Others Similarly Situated,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>CLOOPEN GROUP HOLDING LIMITED, CHANGXUN SUN, YIPENG LI, KUI ZHOU, QINGSHENG ZHENG, XIAODONG LIANG, ZI YANG, MING LIAO, FENG ZHU, LOK YAN HUI, JIANHONG ZHOU, CHING CHIU, XIEGANG XIONG, CHENG LUO, YUNHAO LIU, COGENCY GLOBAL INC., COLLEEN A. DEVRIES, GOLDMAN SACHS (ASIA) L.L.C., CITIGROUP GLOBAL MARKETS INC., CHINA INTERNATIONAL CAPITAL CORPORATION HONG KONG SECURITIES LIMITED, TIGER BROKERS (NZ) LIMITED, and FUTU INC.,<br><br>　　　　　Defendants. | Case No.  1:21-cv-10610-JGK |

MEMORANDUM OF LAW IN SUPPORT OF MOTION OF YUAN WANG FOR
APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL

## **TABLE OF CONTENTS**

**Page(s)**

PRELIMINARY STATEMENT ................................................................................................ 1
STATEMENT OF FACTS .......................................................................................................... 2
ARGUMENT ................................................................................................................................ 5
    I.    WANG SHOULD BE APPOINTED LEAD PLAINTIFF .................................... 5
          A.    Wang Is Willing to Serve as Class Representative .................................... 6
          B.    Wang Has the "Largest Financial Interest" in the Action........................... 6
          C.    Wang Otherwise Satisfies the Requirements of Rule 23 ............................ 7
          D.    Wang Will Fairly and Adequately Represent the Interests
               of the Class and Is Not Subject to Unique Defenses ............................... 10
    II.    LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD
         BE APPROVED ................................................................................................ 11
CONCLUSION........................................................................................................................... 12

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Aude v. Kobe Steel, Ltd.*,
  No. 17-CV-10085 (VSB), 2018 WL 1634872 (S.D.N.Y. Apr. 4, 2018) ................................... 8

*Chahal v. Credit Suisse Grp. AG*,
  No. 18-CV-2268 (AT) (SN), 2018 WL 3093965 (S.D.N.Y. June 21, 2018) ............................ 7

*Dookeran v. Xunlei Ltd.*,
  No. 18-cv-467 (RJS), 2018 WL 1779348 (S.D.N.Y. Apr. 12, 2018) ....................................... 9

*Foley v. Transocean Ltd.*,
  272 F.R.D. 126 (S.D.N.Y. 2011) ............................................................................................. 9

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001) .................................................................................................... 7

*In re Comverse Tech., Inc. Sec. Litig.*,
  No. 06-CV-1825 (NGG) (RER), 2007 WL 680779 (E.D.N.Y. Mar. 2, 2007) .................... 7, 12

*In re Molson Coors Brewing Co. Sec. Litig.*,
  233 F.R.D. 147 (D. Del. 2005) .............................................................................................. 11

*In re Olsten Corp. Sec. Litig.*,
  3 F. Supp. 2d 286 (E.D.N.Y. 1998) ........................................................................................ 7

*In re Orion Sec. Litig.*,
  No. 08 Civ. 1328 (RJS), 2008 WL 2811358 (S.D.N.Y. July 7, 2008) .................................... 8

*In re Oxford Health Plans, Inc. Sec. Litig.*,
  182 F.R.D. 42 (S.D.N.Y. 1998) .............................................................................................. 8

*Janbay v. Canadian Solar, Inc.*,
  272 F.R.D. 113 (S.D.N.Y. 2010) ............................................................................................ 9

*Kaplan v. Gelfond*,
  240 F.R.D. 88 (S.D.N.Y. 2007) .............................................................................................. 8

*Kaplan v. S.A.C. Capital Advisors, L.P.*,
  311 F.R.D. 373 (S.D.N.Y. 2015) .......................................................................................... 11

*Lax v. First Merchants Acceptance Corp.*,
  No. 97 C 2715, 1997 WL 461036 (N.D. Ill. Aug. 6, 1997) ................................................ 6, 7

*Nurlybaev v. ZTO Express (Cayman) Inc.*,
   No. 17-CV-06130 (LTS) (SN), 2017 WL 5256769 (S.D.N.Y. Nov. 13, 2017) ........................7

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*,
   229 F.R.D. 395 (S.D.N.Y. 2004) ...............................................................................................7

**Statutes**

15 U.S.C. § 77z-1................................................................................................................ *passim*

15 U.S.C. § 78u-4 ............................................................................................................... *passim*

Private Securities Litigation Reform Act of 1995 ............................................................1, 6, 7, 10

**Rules**

Fed. R. Civ. P. 23............................................................................................................... *passim*

Yuan Wang ("Wang") respectfully submits this memorandum of law in support of her motion, pursuant to Section 27(a)(3) of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. § 77z-1(a)(3), and Section 21D(a)(3) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), for an Order: (1) appointing Wang as Lead Plaintiff on behalf of all persons who (a) purchased or otherwise acquired Cloopen Group Holding Limited ("Cloopen" or the "Company") American Depositary Shares ("ADSs") pursuant and/or traceable to the registration statement and prospectus (collectively, the "Registration Statement") issued in connection with the Company's February 2021 initial public offering (the "IPO"), and/or (b) purchased or otherwise acquired Cloopen securities between February 9, 2021 and May 10, 2021, inclusive (the "Class Period") (the "Class"); and (2) approving proposed Lead Plaintiff's selection of Pomerantz LLP ("Pomerantz") as Lead Counsel for the Class.

PRELIMINARY STATEMENT

The Complaint in the above-captioned action (the "Action") alleges that the above-captioned defendants ("Defendants") disseminated a materially false or misleading registration statement to investors in connection with the Company's IPO in violation of the Securities Act, as well as defrauded investors in violation of the Exchange Act. Cloopen investors, including Wang, incurred significant losses following the disclosure of the Company's alleged wrongful conduct, which caused Cloopen's share price to fall sharply, damaging Wang and other Cloopen investors.

Pursuant to the PSLRA, the Court is to appoint as Lead Plaintiff the movant or group of movants that possesses the largest financial interest in the outcome of the Action and that satisfies the requirements of Federal Rule of Civil Procedure 23 ("Rule 23"). 15 U.S.C. §§ 77z-1(a)(3)(B)(iii)(I), 78u-4(a)(3)(B)(iii)(I). In connection with her purchases of Cloopen ADSs

1

pursuant and/or traceable to the Registration Statement issued in connection with the Company's IPO, and/or Cloopen securities during the Class Period, Wang incurred losses of approximately $940,588.  *See* Declaration of Jeremy A. Lieberman in Support of Motion ("Lieberman Decl."), Exhibit ("Ex.") A.  Accordingly, Wang believes that she has the largest financial interest in the relief sought in the Action.

Beyond her considerable financial interest, Wang also meets the applicable requirements of Rule 23 because her claims are typical of absent Class members and because she will fairly and adequately represent the interests of the Class.

To fulfill her obligations as Lead Plaintiff and vigorously prosecute the Action on behalf of the Class, Wang has selected Pomerantz as Lead Counsel for the Class.  Pomerantz is highly experienced in the area of securities litigation and class actions and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, as detailed in the firm's resume.

Accordingly, Wang respectfully requests that the Court enter an order appointing Wang as Lead Plaintiff for the Class and approving Wang's selection of Pomerantz as Lead Counsel for the Class.

## STATEMENT OF FACTS

As alleged in the Complaint in the Action, Cloopen claims to be the largest multi-capability cloud-based communications solution provider in China.  The Company purportedly is the only Chinese provider that offers a full suite of cloud-based communications solutions covering communications platform as a service (CPaaS), cloud-based contact centers (cloud-based CC), and cloud-based unified communications and collaborations (cloud-based UC&C). Cloopen claims that it serves a diverse and loyal customer base consisting of enterprises of all

sizes across a variety of industries, including internet, telecommunications, financial services, education, industrial manufacturing, and energy.

In its February 2021 U.S. IPO, Cloopen sold 23 million ADSs (including the full exercise of the underwriter defendants' over-allotment option) at $16 per ADS, netting approximately $342 million in proceeds from the offering. However, the Registration Statement contained materially false and misleading statements of fact and failed to disclose facts required to be disclosed therein regarding Cloopen's business, operations, and prospects.

The Registration Statement led Cloopen ADS purchasers to believe that the Company's much-touted growth strategy, which relied upon cross-selling, up-selling, optimizing existing solutions, and developing new features, was effective. Indeed, as portrayed in the Registration Statement, Cloopen appeared to be retaining and even expanding its customer base, as well as maintaining its key sales metrics such as dollar-based net retention rate, which reflected its ability to increase existing customer revenue.

Yet, Cloopen's representations concerning its successful growth strategy were materially false and misleading. In fact, Cloopen's growth strategy was not working and its existing customers were abandoning the Company. Unbeknownst to investors, Cloopen's dollar-based net retention rate had plummeted during the fourth quarter of 2020 ("4Q 2020"). In 4Q 2020, the Company's net retention rate had dropped well below the 94.7% rate reported for the nine months ended September 30, 2020. The plunging dollar-based net retention rate caused the Company's fiscal year 2020 ("FY 2020") retention rate to tumble to 86.8%, down from the Company's fiscal year 2019 retention rate of 102.7%.

Cloopen's Registration Statement further failed to disclose that an increasing number of its customers were refusing to pay, forcing the Company to record massive increases in its

accounts receivables and allowance for doubtful accounts. The Registration Statement also failed to disclose that Cloopen was weighted down by massive liabilities related to the fair value of certain recently-granted warrants.

On March 26, 2021, just over six weeks after its IPO, Cloopen shocked the market when it published its 4Q 2020 and FY 2020 financial results, which closed on December 31, 2020, more than a month before the IPO. Cloopen reported 4Q 2020 revenues of just $39.6 million, $2 million shy of analysts' consensus, net losses of $46.8 million, representing a staggering 466.9% increase year-over-year, and operating expenses of $27.6 million, representing a 30% increase over the fourth quarter of 2019. Cloopen blamed a "change in fair value of warrant liabilities of . . . US$34.4 million" for Cloopen's remarkable net loss and "an increase in the provision for doubtful accounts resulting from increased in accounts receivables" for the 59.2% increase in general and administrative expenses.

In response to this shocking news, the price of Cloopen's ADSs fell 18.5%, dropping from $14.42 per ADS on March 25, 2021 to $11.75 per ADS on March 26, 2021.

Yet, even then, Cloopen's most senior officers continued to make materially false and misleading statements to the market and failed to reveal the true extent of Cloopen's troubles. In the March 26, 2021 earnings announcement and investor conference call, Cloopen's senior executives continued to misrepresent the Company's expansion strategy, again failing to acknowledge that the strategy was failing and its existing customer base was deteriorating. Nor did they disclose that Cloopen's dollar-based net retention rate had tumbled in 4Q 2020.

Weeks later, as Cloopen belatedly revealed additional facts about its failed growth strategy and withering customer base, including that its dollar-based net retention rate by year

end 2020 fell far below historical periods, Cloopen's share price fell again, closing at $8.97 per ADS on May 12, 2021.

As of the time the Complaint in the Action was filed, Cloopen's share price had dropped as low as $2.70 per ADS, a decline of more than 80% from the $16 IPO price.

## ARGUMENT

I.     WANG SHOULD BE APPOINTED LEAD PLAINTIFF

Wang should be appointed Lead Plaintiff because, to her knowledge, she has the largest financial interest in the Action and otherwise satisfies the requirements of Rule 23. The PSLRA directs courts to consider any motion to serve as lead plaintiff filed by class members in response to a published notice of the class action and to do so by the later of (i) 90 days after the date of publication, or (ii) as soon as practicable after the Court decides any pending motion to consolidate. *See* 15 U.S.C. §§ 77z-1(a)(3)(B)(i)-(ii), 78u-4(a)(3)(B)(i)-(ii).

Further, under 15 U.S.C. §§ 77z-1(a)(3)(B)(iii)(I) and 78u-4(a)(3)(B)(iii)(I), the Court is directed to consider all motions by plaintiffs or purported class members to appoint lead plaintiff filed in response to any such notice. Specifically, the Court "shall" appoint the presumptively "most adequate plaintiff" to serve as lead plaintiff and shall presume that plaintiff is the person or group of persons, that:

> (aa) has either filed the complaint or made a motion in response to a notice . . .;
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. §§ 77z-1(a)(3)(B)(iii)(I), 78u-4(a)(3)(B)(iii)(I).

As set forth below, Wang satisfies all three of these criteria and thus is entitled to the presumption that she is the most adequate plaintiff of the Class and, therefore, should be appointed Lead Plaintiff for the Class.

A. Wang Is Willing to Serve as Class Representative

On December 10, 2021, counsel for the plaintiff in the Action caused a notice to be published over *PR Newswire* pursuant to Sections 27(a)(3)(A)(i) and 21D(a)(3)(A)(i) of the PSLRA (the "PSLRA Notice"), which announced that a securities class action had been filed against Cloopen and other defendants, and which advised investors in Cloopen securities that they had until February 8, 2022—*i.e.*, 60 days from the date of the PSLRA Notice—to file a motion to be appointed as lead plaintiff. *See* Lieberman Decl., Ex. B.

Wang has filed the instant motion pursuant to the PSLRA Notice, and has attached a sworn Certification attesting that she is willing to serve as a representative for the Class, and to provide testimony at deposition and trial, if necessary. *See id.*, Ex. C. Accordingly, Wang satisfies the first requirement to serve as Lead Plaintiff of the Class.

B. Wang Has the "Largest Financial Interest" in the Action

The PSLRA requires a court to adopt a presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class." 15 U.S.C. §§ 77z-1(a)(3)(B)(iii), 78u-4(a)(3)(B)(iii). To the best of her knowledge, Wang has the largest financial interest of any Cloopen investor or investor group seeking to serve as Lead Plaintiff. For claims arising under federal securities laws, courts frequently assess financial interest based upon the four factors articulated in the seminal case *Lax v. First Merchants Acceptance Corp.*: (1) the number of shares purchased; (2) the number of net shares purchased; (3) the total net funds expended; and (4) the approximate losses suffered. No. 97 C

2715, 1997 WL 461036, at *5 (N.D. Ill. Aug. 6, 1997). In accord with other courts nationwide,[1] these *Lax* factors have been adopted and routinely applied by courts in this judicial district. *See, e.g.*, *Chahal v. Credit Suisse Grp. AG*, No. 18-CV-2268 (AT) (SN), 2018 WL 3093965, at *4 (S.D.N.Y. June 21, 2018); *Nurlybaev v. ZTO Express (Cayman) Inc.*, No. 17-CV-06130 (LTS) (SN), 2017 WL 5256769, at *1 (S.D.N.Y. Nov. 13, 2017); *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*, 229 F.R.D. 395, 404-05 (S.D.N.Y. 2004).

Pursuant and/or traceable to the Registration Statement issued in connection with the Company's IPO, and/or during the Class Period, Wang: (1) purchased 394,840 shares of Cloopen ADSs; (2) expended $5,627,341 on her purchases of Cloopen securities; (3) retained 169,613 of her shares of Cloopen ADSs; and (4) incurred losses of approximately $940,588 in connection with her transactions in Cloopen ADSs pursuant and/or traceable to the Registration Statement issued in connection with the Company's IPO, and/or Cloopen securities during the Class Period. *See* Lieberman Decl., Ex. A. To the extent that Wang possesses the largest financial interest in the outcome of this litigation, she is the presumptive "most adequate" plaintiff. 15 U.S.C. §§ 77z-1(a)(3)(B)(iii)(I)(bb), 78u-4(a)(3)(B)(iii)(I)(bb).

C.     Wang Otherwise Satisfies the Requirements of Rule 23

Sections 27(a)(3)(B)(iii)(I)(cc) and 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA further provide that, in addition to possessing the largest financial interest in the outcome of the litigation, a lead plaintiff must "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil

---

[1] *See, e.g.*, *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998); *accord In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG) (RER), 2007 WL 680779, at *6-8 (E.D.N.Y. Mar. 2, 2007); *In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d Cir. 2001).

7

Procedure." Rule 23(a) provides that a class action may proceed if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

In making its determination that a lead plaintiff satisfies Rule 23's requirements, the Court need not raise its inquiry to the level required in ruling on a motion for class certification. Instead, "[t]he parties moving for lead plaintiff are only required to make a prima facie showing that they meet [the requirements of] Rule 23." *Aude v. Kobe Steel, Ltd.*, No. 17-CV-10085 (VSB), 2018 WL 1634872, at *3 (S.D.N.Y. Apr. 4, 2018); *see also Kaplan v. Gelfond*, 240 F.R.D. 88, 94 (S.D.N.Y. 2007) ("[A]t this stage of the litigation, only a preliminary showing of typicality and adequacy is required."). Moreover, "[t]ypicality and adequacy of representation are the only provisions relevant to a determination of lead plaintiff under the PSLRA." *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998); *see also Aude*, 2018 WL 1634872, at *3 ("[C]ourts need only consider the typicality and adequacy requirements."). Here, the Complaint in the Action sufficiently pleads Rule 23(a)(1) numerosity and Rule 23(a)(2) common questions in a manner common to all Class members, including Wang.

The typicality requirement of Rule 23(a)(3) "is satisfied if 'each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" *In re Orion Sec. Litig.*, No. 08 Civ. 1328 (RJS), 2008 WL 2811358, at *5 (S.D.N.Y. July 7, 2008) (quoting *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992)). "[T]he claims of the class representative need not be identical

8

those of all members of the class. '[T]he typicality requirement may be satisfied even if there are factual dissimilarities or variations between the claims of the named plaintiffs and those of other class members, including distinctions in the qualifications of the class members.'" *Janbay v. Canadian Solar, Inc.*, 272 F.R.D. 113, 120 (S.D.N.Y. 2010) (quoting *Bishop v. N.Y. City Dep't of Hous. Pres. & Dev.*, 141 F.R.D. 229, 238 (2d Cir. 1992)).

Wang's claims are typical of those of the Class. Wang alleges, as do all Class members, that Defendants violated the federal securities laws by making false or misleading statements of material facts and/or by omitting to disclose material facts concerning Cloopen. Wang, as did all Class members, purchased or otherwise acquired Cloopen ADSs pursuant and/or traceable to the Registration Statement issued in connection with the Company's IPO, and/or Cloopen securities during the Class Period, at prices alleged to have been artificially inflated by Defendants' misrepresentations or omissions, and was damaged upon the disclosure of those misrepresentations and/or omissions that drove Cloopen's share price downward. These shared claims, which are based on the same legal theory and arise from the same events and course of conduct as the Class's claims, satisfy the typicality requirement of Rule 23(a)(3).

The adequacy of representation requirement of Rule 23(a)(4) is satisfied where "(1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the members of the class; and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy." *Foley v. Transocean Ltd.*, 272 F.R.D. 126, 131 (S.D.N.Y. 2011); *see also Dookeran v. Xunlei Ltd.*, No. 18-cv-467 (RJS), 2018 WL 1779348, at *2 (S.D.N.Y. Apr. 12, 2018) (same).

As set forth in greater detail below, in Pomerantz, Wang has retained counsel highly experienced in vigorously and efficiently prosecuting securities class actions such as this Action,

and submits her choice of Pomerantz to the Court for approval as Lead Counsel for the Class pursuant to 15 U.S.C. §§ 77z-1(a)(3)(B)(v) and 78u-4(a)(3)(B)(v). In addition to Pomerantz, Wang is also represented by the Chinese law firm the Hao Law Firm ("Hao") in this litigation. Should the Court appoint Wang as Lead Plaintiff and appoint her chosen selection of counsel, Pomerantz, as Lead Counsel in this Action, Pomerantz will utilize Hao's services as a Chinese law firm to assist with document translation and provide investigative services in China, where Cloopen is headquartered, thereby providing important litigation advantages to both Wang and the Class. There is no evidence of antagonism or conflict between Wang's interests and the interests of the Class. Moreover, Wang has submitted a signed Certification declaring her commitment to protect the interests of the Class (*see* Lieberman Decl., Ex. C), and the significant losses incurred by Wang demonstrate that she has a sufficient interest in the outcome of this litigation to ensure vigorous advocacy.

Further demonstrating her adequacy, Wang has submitted a Declaration attesting to, *inter alia*, her background, her investing experience, her understanding of the responsibilities of a Lead Plaintiff pursuant to the PSLRA, her decision to seek appointment as Lead Plaintiff, and the steps that she is prepared to take to prosecute this litigation on behalf of the Class. *See id.*, Ex. D.

### D. Wang Will Fairly and Adequately Represent the Interests of the Class and Is Not Subject to Unique Defenses

The presumption in favor of appointing Wang as Lead Plaintiff may be rebutted only upon proof "by a member of the purported plaintiff class" that the presumptively most adequate plaintiff:

> (aa)  will not fairly and adequately protect the interests of the class; or

10

    (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. §§ 77z-1(a)(3)(B)(iii)(II), 78u-4(a)(3)(B)(iii)(II).

  The ability and desire of Wang to fairly and adequately represent the Class has been discussed above. Wang is not aware of any unique defenses Defendants could raise that would render her inadequate to represent the Class. Accordingly, Wang should be appointed Lead Plaintiff for the Class.

## II. LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED

  The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to Court approval. *See* 15 U.S.C. §§ 77z-1(a)(3)(B)(v), 78u-4(a)(3)(B)(v). The Court should only interfere with the lead plaintiff's choice if necessary to "protect the interests of the class." 15 U.S.C. §§ 77z-1(a)(3)(B)(iii)(II)(aa), 78u-4(a)(3)(B)(iii)(II)(aa); *see also Kaplan v. S.A.C. Capital Advisors, L.P.*, 311 F.R.D. 373, 383 (S.D.N.Y. 2015) ("The PSLRA evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention." (quoting *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 398 (S.D.N.Y. 2008))); *see also In re Molson Coors Brewing Co. Sec. Litig.*, 233 F.R.D. 147, 151 (D. Del. 2005).

  Wang has selected Pomerantz as Lead Counsel for the Class. Pomerantz is a premier firm, highly experienced in the areas of securities litigation and class action lawsuits, which has successfully prosecuted numerous such actions on behalf of investors over its 80-plus year history, as detailed in its firm resume. *See* Lieberman Decl., Ex. E. Pomerantz recently secured a recovery of $3 billion on behalf of investors in the securities of Petróleo Brasileiro S.A. — Petrobras, the largest class action settlement in a decade and the largest settlement ever in a class action involving a foreign issuer. *See id.* Petrobras is part of a long line of record-setting

recoveries led by Pomerantz, including the $225 million settlement in *In re Comverse Technology, Inc. Securities Litigation*, No. 06-CV-1825 (E.D.N.Y.), in June 2010. *Id.* Most recently, Pomerantz announced as Lead Counsel on behalf of a class of Fiat Chrysler Automobiles N.V. investors that it has reached a $110 million settlement with the company. *See id.* As a result of its extensive experience in similar litigation, Wang's choice of counsel, Pomerantz, has the skill, knowledge, expertise, resources, and experience that will enable the firm to prosecute the Class's claims in this litigation effectively and expeditiously. The Court may be assured that by approving Wang's selection of Pomerantz as Lead Counsel, the Class members will receive the best legal representation available. Thus, Wang respectfully urges the Court to appoint Pomerantz to serve as Lead Counsel.

## CONCLUSION

For the foregoing reasons, Wang respectfully requests that the Court issue an Order: (1) appointing Wang as Lead Plaintiff for the Class; and (2) approving proposed Lead Plaintiff's selection of Pomerantz as Lead Counsel for the Class.

Dated:  February 8, 2022  Respectfully submitted,

POMERANTZ LLP

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
J. Alexander Hood II
James M. LoPiano
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
jalieberman@pomlaw.com
ahood@pomlaw.com
jlopiano@pomlaw.com

*Counsel for Yuan Wang and
Proposed Lead Counsel for the Class*

CERTIFICATE OF COUNSEL PURSUANT TO INDIVIDUAL RULE II.D

Pursuant to Rule II.D. of the Individual Practices of the Honorable John G. Koeltl ("Individual Rule II.D."), the undersigned counsel certifies that the foregoing memorandum of law contains 3,583 words, exclusive of the cover page, this certification of compliance, the table of contents, and the table of authorities, and is in compliance with the formatting rules of Individual Rule II.D.

Dated:  February 8, 2022                     */s/ Jeremy A. Lieberman*
                                                                             Jeremy A. Lieberman

CERTIFICATE OF SERVICE

I, Jeremy A. Lieberman, hereby certify that on February 8, 2022, a true and correct copy of the foregoing was served in accordance with the Federal Rules of Civil Procedure with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing to all parties with an email address of record who have appeared and consented to electronic service in this action.

Dated: February 8, 2022                              */s/ Jeremy A. Lieberman*
                                                                            Jeremy A. Lieberman