## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BOYAN DONG, Individually and On Behalf of All Others Similarly Situated, | Case No. 1:21-cv-10610-JGK |
| Plaintiff, | |
| v. | |
| CLOOPEN GROUP HOLDING LIMITED, CHANGXUN SUN, YIPENG LI, KUI ZHOU, QINGSHENG ZHENG, XIAODONG LIANG, ZI YANG, MING LIAO, FENG ZHU, LOK YAN HUI, JIANHONG ZHOU, CHING CHIU, XIEGANG XIONG, CHENG LUO, YUNHAO LIU, COGENCY GLOBAL INC., COLLEEN A. DEVRIES, GOLDMAN SACHS (ASIA) L.L.C., CITIGROUP GLOBAL MARKETS INC., CHINA INTERNATIONAL CAPITAL CORPORATION HONG KONG SECURITIES LIMITED, TIGER BROKERS (NZ) LIMITED, and FUTU INC., | |
| Defendants. | |

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT CLOOPEN GROUP HOLDING LIMITED'S
## MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ....................................................................................................1

FACTUAL BACKGROUND ........................................................................................................2

    A.    Cloopen ............................................................................................................2

    B.    Cloopen's IPO Disclosures ..............................................................................2

    C.    Cloopen's Post-IPO Financial Results.............................................................5

    D.    The Complaint .................................................................................................6

ARGUMENT .................................................................................................................................6

I.    THE COMPLAINT DOES NOT PLEAD AN ACTIONABLE MISSTATEMENT
OR OMISSION....................................................................................................................8

    A.    Plaintiff's Claims Fail to Satisfy Rule 9(b).....................................................8

    B.    Plaintiff Alleges No Actionable Misstatement or Omission in the
Registration Statement ....................................................................................9

        1.    Plaintiff Fails to Identify Challenged Statements with Specificity.............9

        2.    The Registration Statement Was Properly Limited to Q3 2020
Financials ....................................................................................................9

        3.    Alleged Omissions Regarding the Series F Warrant ................................11

        4.    Statements Regarding Growth Strategies and Customer Retention .........13

            a)    Cloopen's Actual Statements Were Not False or Misleading ......13

            b)    Cloopen Disclosed the Allegedly Omitted Information ...............16

            c)    The Challenged Statements Are Non-Actionable........................17

                (1)    Non-Actionable Opinions .................................................17

                (2)    Non-Actionable Statements of Corporate Optimism........19

                (3)    Non-Actionable Forward-Looking Statements.................20

        5.    Statements Regarding Customer Payments .............................................20

i

6.  Plaintiff Fails to Plead a Violation of Item 303 ........................................ 22

7.  Plaintiff Fails to Plead a Violation of Item 105 ........................................ 22

C.  Plaintiff Alleges No Actionable Post-IPO Misstatement or Omission ................23

II.  PLAINTIFF'S SECTION 10(B) CLAIM INDEPENDENTLY FAILS FOR
     FAILURE TO PLEAD SCIENTER .......................................................................24

III.  THE CONTROL PERSON CLAIMS SHOULD BE DISMISSED ................................28

CONCLUSION.......................................................................................................29

CERTIFICATE OF COMPLIANCE .............................................................................30

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Acito v. IMCERA Grp., Inc.*,
  47 F.3d 47 (2d Cir. 1995).................................................................................28

*Altayyar v. Etsy, Inc.*,
  242 F. Supp. 3d 161 (E.D.N.Y. 2017),
  *aff'd*, 731 F. App'x 35 (2d Cir. 2018).............................................................18

*Altayyar v. Etsy, Inc.*,
  731 F. App'x 35 (2d Cir. 2018) .......................................................................18

*Arfa v. Mecox Lane Ltd.*,
  2012 WL 697155 (S.D.N.Y. Mar. 5),
  *aff'd*, 504 F. App'x 14 (2d Cir. 2012)..............................................................22

*Asay v. Pinduoduo Inc.*,
  2020 WL 1530745 (S.D.N.Y. Mar. 30, 2020),
  *aff'd*, 2021 WL 3871269 (2d Cir. Aug. 31, 2021) ..........................................10

*Asay v. Pinduoduo Inc.*,
  2021 WL 3871269 (2d Cir. Aug. 31, 2021).......................................10, 12, 24

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).....................................................................................6, 7

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
  493 F.3d 87 (2d Cir. 2007)...........................................................................2, 28

*Caiafa v. Sea Containers Ltd.*,
  331 F. App'x 14 (2d Cir. 2009) .........................................................................8

*City of Brockton Ret. Sys. v. Avon Prods., Inc.*,
  2014 WL 4832321 (S.D.N.Y. Sept. 28, 2014)................................................27

*City of Coral Springs Police Officers' Ret. Plan v. Farfetch Ltd.*,
  565 F. Supp. 3d 478 (S.D.N.Y. 2021)...............................................................8

*City of Omaha Police & Fire Ret. Sys. v. Evoqua Water Techs. Corp.*,
  450 F. Supp. 3d 379 (S.D.N.Y. 2020)............................................................8, 9

*ECA, Loc. 134 IBEW Joint Pension Tr. of Chi. v. JPMorgan Chase Co.*,
  553 F.3d 187 (2d Cir. 2009)........................................................................7, 25

*Glaser v. The9, Ltd.*,
  772 F. Supp. 2d 573 (S.D.N.Y. 2011).............................................................25

*Harris v. AmTrust Fin. Servs., Inc.*,
    135 F. Supp. 3d 155 (S.D.N.Y. 2015),
    *aff'd*, 649 F. App'x 7 (2d Cir. 2016) ...................................................................2

*In re Aceto Corp. Sec. Litig.*,
    2019 WL 3606745 (E.D.N.Y. Aug. 6, 2019) ....................................................28

*In re Adient plc Sec. Litig.*,
    2020 WL 1644018 (S.D.N.Y. Apr. 2, 2020) ......................................................7

*In re Axis Cap. Holdings Ltd. Sec. Litig.*,
    456 F. Supp. 2d 576 (S.D.N.Y. 2006) ............................................................8, 9

*In re Britannia Bulk Holdings Inc. Sec. Litig.*,
    665 F. Supp. 2d 404 (S.D.N.Y. 2009) ..............................................................17

*In re Coty Inc. Sec. Litig.*,
    2016 WL 1271065 (S.D.N.Y. Mar. 29, 2016) ......................................10, 22, 23

*In re Fairway Grp. Holdings Corp. Sec. Litig.*,
    2015 WL 4931357 (S.D.N.Y. Aug. 19),
    *report & recommendation adopted*, 2015 WL 5255469 (Sept. 9, 2015) ....................18, 20

*In re Intelligroup Sec. Litig.*,
    527 F. Supp. 2d 262 (D.N.J. 2007) ...................................................................28

*In re ITT Educ. Servs., Inc. Sec. & S'holder Derivatives Litig.*,
    859 F. Supp. 2d 572 (S.D.N.Y. 2012) ................................................................9

*In re Jumei Int'l Holding Ltd. Sec. Litig.*,
    2017 WL 95176 (S.D.N.Y. Jan. 10, 2017) .........................................................6

*In re Lions Gate Ent. Corp. Sec. Litig.*,
    165 F. Supp. 3d 1 (S.D.N.Y. 2016) .................................................................11

*In re Maxwell Techs., Inc. Sec. Litig.*,
    18 F. Supp. 3d 1023 (S.D. Cal. 2014) ..............................................................28

*In re Morgan Stanley Info. Fund Sec. Litig.*,
    592 F.3d 347 (2d Cir. 2010) .............................................................................28

*In re Morgan Stanley Tech. Fund Sec. Litig.*,
    643 F. Supp. 2d 366 (S.D.N.Y. 2009),
    *aff'd*, 592 F.3d 347 (2d Cir. 2010) ..................................................................11

*In re Optionable Sec. Litig.*,
    577 F. Supp. 2d 681 (S.D.N.Y. 2008) ..............................................................11

*In re Synchrony Fin. Sec. Litig.*,
    988 F.3d 157 (2d Cir. 2021) .............................................................................13

*In re Turkcell Iletisim Hizmetler, A.S. Sec. Litig.*,
    202 F. Supp. 2d 8 (S.D.N.Y. 2001) ................................................................10

*In re Weight Watchers Int'l Inc. Sec. Litig.*,
   504 F. Supp. 3d 224 (S.D.N.Y. 2020)........................................................16, 25

*In re Wells Fargo & Co. Sec. Litig.*,
   2021 WL 4482102 (S.D.N.Y. Sept. 30, 2021) ...................................................13

*Jackson v. Abernathy*,
   960 F.3d 94 (2d Cir. 2020)...............................................................................28

*Jackson v. Halyard Health, Inc.*,
   2018 WL 1621539 (S.D.N.Y. Mar. 30, 2018) ..................................................26

*Kalnit v. Eichler*,
   264 F.3d 131 (2d. Cir. 2001)............................................................................27

*La Pietra v. RREEF Am., L.L.C.*,
   738 F. Supp. 2d 432 (S.D.N.Y. 2010)...............................................................24

*Ladmen Partners, Inc. v. Globalstar, Inc.*,
   2008 WL 4449280 (S.D.N.Y. Sept. 30, 2008)...................................17, 19, 20

*Lau v. Opera Ltd.*,
   527 F. Supp. 3d 537 (S.D.N.Y. 2021)...............................................................23

*Luo v. Sogou, Inc.*,
   465 F. Supp. 3d 393 (S.D.N.Y. 2020)...............................................................22

*N. Collier Fire Control & Rescue Dist. Firefighter Pension Plan &
   Plymouth Cnty. Ret. Ass'n v. MDC Partners, Inc.*,
   2016 WL 5794774 (S.D.N.Y. Sept. 30, 2016).............................................23, 24

*Nadoff v. Duane Reade, Inc.*,
   107 F. App'x 250 (2d Cir. 2004) ......................................................................16

*Nguyen v. MaxPoint Interactive, Inc.*,
   234 F. Supp. 3d 540 (S.D.N.Y. 2017)..........................................................21, 22

*Olkey v. Hyperion 1999 Term Tr., Inc.*,
   98 F.3d 2 (2d Cir. 1996)...................................................................................17

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
   575 U.S. 175 (2015)..........................................................................................17

*P. Stolz Family P'ship L.P. v. Daum*,
   355 F.3d 92 (2d Cir. 2004)...............................................................................20

*Pehlivanian v. China Gerui Advanced Materials Grp., Ltd.*,
   153 F. Supp. 3d 628 (S.D.N.Y. 2015)...............................................................20

*Plumbers & Steamfitters Loc. 773 Pension Fund v.
   Canadian Imperial Bank of Com.*,
   694 F. Supp. 2d 287 (S.D.N.Y. 2010)..........................................................26, 27

*Plumbers' Union Loc. No. 12 Pension Fund v. Swiss Reinsurance Co.*,
   753 F. Supp. 2d 166 (S.D.N.Y. 2010) ................................................................24

*Richman v. Goldman Sachs Grp., Inc.*,
   868 F. Supp. 2d 261 (S.D.N.Y. 2012) ................................................................12

*Rombach v. Chang*,
   355 F.3d 164 (2d Cir. 2004) ..........................................................................8, 19

*Rudman v. CHC Grp. Ltd.*,
   217 F. Supp. 3d 718 (S.D.N.Y. 2016) ...............................................................19

*Salim v. Mobile Telesystems PJSC*,
   2021 WL 796088 (E.D.N.Y. Mar. 1, 2021),
   *aff'd*, 2022 WL 966903 (2d Cir. Mar. 31, 2022) ..............................................27

*Schoenhaut v. Am. Sensors, Inc.*,
   986 F. Supp. 785 (S.D.N.Y. 1997) ....................................................................21

*Scott v. Gen. Motors Co.*,
   46 F. Supp. 3d 387 (S.D.N.Y. 2014),
   *aff'd*, 605 F. App'x 52 (2d Cir. 2015) ..............................................................13

*Shemian v. Research In Motion Ltd.*,
   570 F. App'x 32 (2d Cir. 2014) .........................................................................25

*Singh v. Schikan*,
   106 F. Supp. 3d 439 (S.D.N.Y. 2015) ..................................................................7

*Sjunde AP-Fonden v. Gen. Elec. Co.*,
   417 F. Supp. 3d 379 (S.D.N.Y. 2019) .................................................................9

*Solow v. Citigroup, Inc.*,
   2012 WL 1813277 (S.D.N.Y. May 18, 2012),
   *aff'd*, 507 F. App'x 81 (2d Cir. 2013) ..............................................................13

*Stadnick v. Vivint Solar, Inc.*,
   861 F.3d 31 (2d Cir. 2017) ..........................................................................10, 22

*Steinberg v. Ericsson LM Tel. Co.*,
   2008 WL 5170640 (S.D.N.Y. Dec. 10, 2008) ...................................................26

*Stratte-McClure v. Morgan Stanley*,
   776 F.3d 94 (2d Cir. 2015) ................................................................................25

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007) ...................................................................................24, 25

*Town of Davie Police Officers Ret. Sys. v. City of N. Miami Beach
   Police Officers' & Firefighters' Ret. Plan*,
   2021 WL 5142702 (2d Cir. Nov. 5, 2021) .........................................................25

*Wandel v. Gao*,
   2022 WL 768975 (S.D.N.Y. Mar. 14, 2022) .........................................10, 12, 22

*Willard v. UP Fintech Holding Ltd.*,
    527 F. Supp. 3d 609 (S.D.N.Y. 2021)........................................................................13, 17

*Woolgar v. Kingstone Cos., Inc.*,
    477 F. Supp. 3d 193 (S.D.N.Y. 2020)........................................................................17, 23

## STATUTES

15 U.S.C. § 77k(a) ....................................................................................................................7

## RULES

17 C.F.R. § 210.3-12 ................................................................................................................10

17 C.F.R. § 240.10b-5(b) .........................................................................................................11

Fed. R. Civ. P. 9(b) .............................................................................................................1, 8, 9

Fed. R. Civ. P. 12(b)(6)...........................................................................................................1, 6

Defendant Cloopen Group Holding Limited ("Cloopen") respectfully submits this Memorandum of Law in Support of its Motion to Dismiss the Amended Class Action Complaint (the "Complaint") pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act ("PSLRA").[1]

## PRELIMINARY STATEMENT

Lead Plaintiff Guozhang Wang ("Plaintiff") fails to allege securities fraud in connection with Cloopen's February 2021 initial public offering ("IPO") and subsequent disclosures for multiple independent reasons.  First, Plaintiff alleges no actionable misstatements or omissions in the Registration Statement.[2]  The Complaint purports to challenge statements regarding Cloopen's warrant liabilities, customer retention, and customer payments on the basis of alleged omissions of Q4 2020 information, but the Registration Statement was expressly and properly limited to Q3 2020 financials because Q4 financials had not been released or reported at the time of the IPO.  Therefore, Cloopen had no duty to disclose the allegedly omitted Q4 financials in the Registration Statement.  Moreover, contrary to Plaintiff's allegations, the Registration Statement in fact **_disclosed_** the allegedly omitted information regarding increasing warrant liabilities, decreasing customer retention, and increasing accounts receivables over the 21-month-period leading to the IPO.  Plaintiff also challenges many non-actionable statements of opinion

---

[1] Citations to "¶__" refer to paragraphs of the Complaint (ECF No. 84).  "Ex." refers to the exhibits to the Declaration of Sheryl Shapiro Bassin filed herewith.

[2] "Registration Statement" refers to Cloopen's Registration Statement filed with the U.S. Securities and Exchange Commission ("SEC") on Form F-1 in connection with Cloopen's IPO, including Cloopen's Prospectus filed on February 9, 2021 pursuant to Rule 424(b)(4).

1

and corporate optimism and forward-looking statements regarding Cloopen's customers and growth.

Second, Plaintiff fails to allege an actionable misstatement or omission in connection with Cloopen's Q4 and FY2020 disclosures following the IPO.

Third, as to Plaintiff's claims under the Securities Exchange Act of 1934 ("Exchange Act"), Plaintiff's vague scienter allegations are far too sparse to withstand the PSLRA's requirements. For these reasons, the Complaint should be dismissed with prejudice.

## FACTUAL BACKGROUND[3]

### A.    Cloopen

Cloopen is the largest multi-capability cloud-based communications solution provider in China. ¶¶2, 51. Cloopen's offerings include a full suite of cloud-based solutions covering Communications Platforms as a Service, cloud-based Contact Centers ("cloud-based CC"), and cloud-based Unified Communications and Collaborations. *Id.* Leading up to its IPO, Cloopen experienced "robust growth," but was not profitable. Ex. 1 at 2, 13-14, 19-20.

### B.    Cloopen's IPO Disclosures

On November 13, 2020, Cloopen filed a draft Registration Statement on Form F-1 with the SEC in preparation for its IPO. ¶64. The SEC declared the Registration Statement effective on February 8, 2021. ¶69. On February 9, 2021, Cloopen filed a final Prospectus on Form

---

[3] In deciding this Motion, the Court may consider "statements or documents incorporated into the complaint by reference [and] legally required public disclosure documents filed with the SEC[.]" *Harris v. AmTrust Fin. Servs., Inc.*, 135 F. Supp. 3d 155, 168 (S.D.N.Y. 2015) (quoting *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)), *aff'd*, 649 F. App'x 7 (2d Cir. 2016).

424B4, which incorporated and formed part of the Registration Statement, and launched its IPO. ¶¶1, 3, 70; Ex. 1.

The Registration Statement included reported financial metrics through the nine months ended September 30, 2020, *e.g.*, Ex. 1 at 2, 14-17, 19-20, 22-23, while noting that "[w]e estimate that the year-on-year growth of our revenues and increase of costs and expenses in the fourth quarter of 2020 to be slightly below those of the first nine months of 2020[.]" *Id.* at 2. The Registration Statement disclosed the very metrics that Plaintiff alleges were omitted, as well as the risks that allegedly came to pass after Cloopen's IPO. For example, as the Complaint largely recognizes, the Registration Statement disclosed:

- ***Increasing Losses***: Cloopen's net losses increased from RMB 155.5 million in 2018, to RMB 183.5 million ($27.0 million) in 2019, and to RMB 203.7 million ($30.0 million) in the nine months ended September 30, 2020. ¶¶90, 98; Ex. 1 at 2, 19-20, 100, 121, 123, 143.

- ***Increasing Accounts Receivables and Allowance for Doubtful Accounts***: Cloopen's accounts receivables increased from RMB 150.3 million in 2018, to RMB 219.1 million ($32.3 million) in 2019, and to RMB 232.0 million ($34.2 million) in the nine months ended September 30, 2020. ¶105; Ex. 1 at 22. At the same time, Cloopen's allowance for doubtful accounts increased from RMB 19.3 million in 2018, to RMB 22.4 million ($3.3 million) in 2019, and to RMB 31.6 million ($4.7 million) in the nine months ended September 30, 2020. ¶105; Ex. 1 at 22-23.

- ***Decreasing Retention Rate***: Cloopen's dollar-based net customer retention rate for solutions it offers on a recurring basis decreased from 135.7% in 2018, to 102.7% in 2019, and to 94.7% in the nine months ended September 30, 2020. ¶55; Ex. 1 at 2, 17,

100, 103, 142, 146, 159.  The same metric for cloud-based CC solutions offered on a

recurring basis decreased from 147.1% in 2018, to 99.8% in 2019, and to 78.6% in the

nine months ended September 30, 2020.  Ex. 1 at 116, 153.

The Registration Statement also contained detailed and specific warnings, including 60

pages of risk factors.  Ex. 1 at 18-77.  Cloopen warned about competitive and financial risks,

including that "[o]ur future business growth and expansion is dependent on the continued

development of our solutions and the markets our solutions target" and that "[w]e have incurred

significant net losses and negative operating cash flows since inception, and we may therefore

not be able to achieve or sustain profitability in the future."  *Id.* at 19.[4]  The Registration

Statement warned that Cloopen has a "limited operating history, which could make it difficult to

forecast our revenues and evaluate our business and prospects," and that "[w]e have experienced

rapid growth and our recent growth rates may not be indicative of our future growth."  *Id.* at 19,

32.

With respect to customers, the Registration Statement cautioned:

> ***If we fail to attract new customers or retain existing ones, our business, results***
> ***of operations and financial condition could be materially and adversely affected.***
> In order to increase our revenues and maintain future growth, we must attract new
> customers and encourage existing customers to continue their subscriptions,
> increase their usage, and purchase additional features and solutions from us.

*Id.* at 18.  Cloopen warned that "[i]f we fail to maintain and expand sales channels, it could limit

the number of customers we serve and materially and adversely affect our ability to grow and

expand."  *Id.* at 33.  Finally, Cloopen warned that "[o]ur revenues are concentrated in a limited

number of enterprise customers," *id.* at 34, and that "[a]ny catastrophe, including outbreaks of

---

[4] Emphasis has been removed from the original in certain quotes for ease of review.

health pandemics and other extraordinary events, could have a negative impact on our business operations." *Id.* at 30.

Although the Registration Statement included disclosures about Cloopen's plans and hopes for the future, it also cautioned investors "not [to] place undue reliance" upon such forward-looking statements. *Id.* at 78. The Registration Statement informed investors that "future results may be materially different from and worse than what we expect." *Id.*

The Registration Statement also disclosed that in November 2020, Cloopen issued a warrant to Novo Investment HK Limited valued at $34,000,000, granting a subscription right for an aggregate of 11,799,685 series F preferred shares of Cloopen at the exercise price of $2.8814 per share, subject to adjustment ("Series F Warrant"), which was fully exercised in January 2021. ¶73; Ex. 1 at 212, F-124. The Registration Statement explained that Cloopen's accounting policy is to record warrants as liabilities on the balance sheets at their estimated fair value, subject to remeasurement at the end of each reporting period. ¶75; Ex. 1 at F-19.

## C.   Cloopen's Post-IPO Financial Results

On March 26, 2021, Cloopen announced financial results for Q4 and FY2020. ¶¶118, 177; Ex. 2; Ex. 3. Cloopen's quarterly revenues increased 15.5 percent over the fourth quarter of the prior year, and full year 2020 revenues were 18.1 percent higher than in 2019. Ex. 2 at 1. Cloopen also disclosed net losses of $305.4 million, increased accounts receivables, and increased non-cash warrant liabilities in Q4. Ex. 2 at 1, 3, 5, 9-10, 12; *see* ¶¶116, 119. Cloopen explained that expenses had increased "primarily" due to IPO-related costs and share-based compensation. ¶116; Ex. 3 at 4. The price of Cloopen's American Depositary Shares ("ADSs"), which had already dropped by 36.5% between March 19 and 25 for reasons unrelated to any alleged misstatement, fell another 18.5% on March 26. Ex. 4; ¶121.

On May 10, 2021, Cloopen filed its Annual Report on Form 20-F for FY2020.  ¶122. The Complaint alleges that this filing revealed (1) Cloopen's "purportedly 'loyal' existing customer base was not 'expanding' into additional solutions," (2) Cloopen's customer base was deteriorating, and (3) the $5.50 per share fair value underlying Cloopen's Series F Warrant as of December 31, 2020.  ¶¶122-23.  On May 11, the price of Cloopen's ADSs increased 3.13% before falling 9.30% on May 12.  Ex. 4; *see* ¶124.

### D.    The Complaint

The Complaint asserts claims against Cloopen under (i) Section 11 of the Securities Act of 1933 ("Securities Act"); (ii) Section 15 of the Securities Act; (iii) Section 10(b) of the Exchange Act; and (iv) Section 20(a) of the Exchange Act.  ¶¶139-95.[5]

A parallel putative class action asserting Securities Act claims arising out of the same IPO is pending in New York State Supreme Court.  *See St. John v. Cloopen Group Holding Ltd. et al.*, No. 652617/2021 (N.Y. Sup. Ct., N.Y. Cnty. filed Apr. 19, 2021).  Motions to dismiss that action are fully briefed.

## ARGUMENT

To survive a motion to dismiss pursuant to Rule 12(b)(6), Plaintiff must plead "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  "[F]acts that are merely consistent with a

---

[5] Although Cloopen understands that certain defendants have not been served, *see* ECF No. 81 n.1, the Court may nevertheless dismiss claims against them.  *See In re Jumei Int'l Holding Ltd. Sec. Litig.*, 2017 WL 95176, at *1 n.1, *6 (S.D.N.Y. Jan. 10, 2017).

defendant's liability" do not suffice, nor do "[t]hreadbare recitals of the elements of a cause of action" or "legal conclusion[s] couched as . . . factual allegation[s]." *Id.* (citation omitted).

Section 11 provides a private right of action for purchasers if a registration statement (i) "contained an untrue statement of a material fact," (ii) "omitted to state a material fact required [by law] to be stated therein," or (iii) "omitted to state a material fact . . . necessary to make the statements therein not misleading[.]" 15 U.S.C. § 77k(a). An omission is material only if there is "a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *ECA, Loc. 134 IBEW Joint Pension Tr. of Chi. v. JPMorgan Chase Co.*, 553 F.3d 187, 197 (2d Cir. 2009) (citation omitted). Likewise, a misstatement is material if "'there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to act.'" *Id.*

To state a claim under Section 10(b), a plaintiff must allege "that the defendant, in connection with the purchase or sale of securities, made a materially false statement or omitted a material fact, with scienter, and that the plaintiff's reliance on the defendant's action caused injury to the plaintiff." *ECA*, 553 F.3d at 197 (citation omitted).

Sections 15 of the Securities Act and 20(a) of the Exchange Act impose control person liability for Sections 11 and 10(b) claims, respectively. *Singh v. Schikan*, 106 F. Supp. 3d 439, 447 (S.D.N.Y. 2015); *In re Adient plc Sec. Litig.*, 2020 WL 1644018, at *30 (S.D.N.Y. Apr. 2, 2020).

As explained below, Plaintiff's claims are legally deficient.

## I.  THE COMPLAINT DOES NOT PLEAD AN ACTIONABLE MISSTATEMENT OR OMISSION

### A.  Plaintiff's Claims Fail to Satisfy Rule 9(b)

Rule 9(b)'s heightened pleading standard applies where, as here, the Securities Act and Exchange Act claims are all are premised on allegations of fraud.  *Rombach v. Chang*, 355 F.3d 164, 171 (2d Cir. 2004); *see In re Axis Cap. Holdings Ltd. Sec. Litig.*, 456 F. Supp. 2d 576, 598 (S.D.N.Y. 2006) (Securities Act claims "undisputedly sound in fraud" where "[p]laintiffs do not allege that the Registration Statement or Prospectus contains any additional 'untrue statement [or omission] of a material fact,' independent of [Section 10(b)] allegations").

Here, "[e]very statement that Plaintiff[] allege[s] to be false or misleading under the Securities Act [he] also allege[s] to be false and misleading for the same reasons under the Exchange Act."  *City of Coral Springs Police Officers' Ret. Plan v. Farfetch Ltd.*, 565 F. Supp. 3d 478, 491 n.3 (S.D.N.Y. 2021); *compare* ¶141 *with* ¶162 (challenging the same statements and alleged omissions in the Registration Statement).  Therefore, Plaintiff must plead his Securities Act claims with particularity under Rule 9(b), which requires him to "state with particularity the circumstances constituting fraud or mistake."  *See Caiafa v. Sea Containers Ltd.*, 331 F. App'x 14, 16 (2d Cir. 2009) (affirming dismissal of Section 11 claim for failure to meet Rule 9(b) where it "relies on the same factual allegations that served as a basis for their Section 10(b) claim").[6]  Regardless of the pleading standard, however, Plaintiff fails to allege any material misstatement or omission as required to sustain his claims.

---

[6] Plaintiff cannot avoid Rule 9(b) by structuring the Complaint into separate sections or including self-serving disclaimers because both the Securities Act and Exchange Act claims rest on the same theories.  *See, e.g.*, *City of Omaha Police & Fire Ret. Sys. v. Evoqua Water Techs.*

### B. Plaintiff Alleges No Actionable Misstatement or Omission in the Registration Statement

#### 1. Plaintiff Fails to Identify Challenged Statements with Specificity

As a threshold matter, the Complaint fails because it does not identify what specific statements are challenged, instead including lengthy block quotes with language bolded and italicized, seemingly at random. *See* ¶¶73-126. The Complaint does not explain whether it is only challenging the emphasized language, the block quotes in their entirety, or some subset. *See In re ITT Educ. Servs., Inc. Sec. & S'holder Derivatives Litig.*, 859 F. Supp. 2d 572, 577-78 (S.D.N.Y. 2012) (block quotes with bolding fail to satisfy Rule 9(b) and PSLRA requirements to identify with specificity each challenged statement). Similarly, Plaintiff's vague assertions that certain challenged statements were misleading "[f]or these same reasons" or "for the reasons stated above" (*see* ¶¶87, 93, 104) fail to satisfy the PSLRA's pleading standard. *See Sjunde AP-Fonden v. Gen. Elec. Co.*, 417 F. Supp. 3d 379, 410 (S.D.N.Y. 2019) (dismissing statements challenged "for the reasons identified in ¶ 368" for failure to plead with specificity).

#### 2. The Registration Statement Was Properly Limited to Q3 2020 Financials

The gravamen of the Complaint is that the Registration Statement should have disclosed financial results or information from Q4 2020. *See, e.g.*, ¶¶4-5, 7-9, 11. But the Registration

---

*Corp.*, 450 F. Supp. 3d 379, 401-02 (S.D.N.Y. 2020) (applying Rule 9(b) to Section 11 claim even though plaintiffs "separate[d] their claims under the Exchange Act from those under the Securities Act into different sections in the Complaint" and "expressly disclaim[ed] any allegation of fraud as to their Securities Act claims"); *see also Axis Cap.*, 456 F. Supp. 2d at 598 (assertion that Section 11 and 12 claims were "not based on and do [ ] not sound in fraud" insufficient to preclude application of Rule 9(b)).

Statement was expressly limited to Q3 2020, and Q4 financials had not been released or reported at the time of the IPO. *See* Ex. 1 at 13.

Cloopen was under no duty to disclose all current information up to the moment of its IPO; such a duty would be unworkable. *See Asay v. Pinduoduo Inc.*, 2021 WL 3871269, at *3-4 (2d Cir. Aug. 31, 2021) (no duty to disclose increased marketing expenses for unreleased quarter closing one month ***prior*** to the IPO); *see also Stadnick v. Vivint Solar, Inc.*, 861 F.3d 31, 36, 38 (2d Cir. 2017) (no duty to disclose results for quarter closing one day ***prior*** to the IPO); *In re Coty Inc. Sec. Litig.*, 2016 WL 1271065, at *6 (S.D.N.Y. Mar. 29, 2016) (no duty to disclose sales drop occurring "two weeks before the Registration Statement became effective"); 17 C.F.R. § 210.3-12(a), (g); *cf. In re Turkcell Iletisim Hizmetler, A.S. Sec. Litig.*, 202 F. Supp. 2d 8, 13 (S.D.N.Y. 2001) ("[T]he SEC and the case law recognizes how unworkable and potentially misleading a system of instantaneous disclosure out [of] the normal reporting periods would be."; rejecting argument that "would require the immediate release of data without the benefit of reflection or certainty provided by the traditionally recognized reporting periods").  Plaintiff does not plead that Cloopen was able to disclose Q4 2020 results at the time of the IPO since they had not yet been reported. *Asay v. Pinduoduo Inc.*, 2020 WL 1530745, at *9 (S.D.N.Y. Mar. 30, 2020) (no SEC requirement or guidance to disclose non-final quarterly results or to delay public offering until final results were available), *aff'd*, 2021 WL 3871269 (2d Cir. Aug. 31, 2021).

Furthermore, that the Registration Statement included some limited information "as of the date of this Prospectus" (¶¶56, 81) does not trigger a broad duty to update all information. *See Wandel v. Gao*, 2022 WL 768975, at *10 (S.D.N.Y. Mar. 14, 2022) (no duty to disclose all financial results from quarter ended two weeks before IPO even though registration statement included preliminary data from that quarter).

10

3.      Alleged Omissions Regarding the Series F Warrant

The Registration Statement's description of the Series F Warrant is not "misleading," nor is there an actionable omission.  *See* ¶¶73-81.  It is well established that "omissions" are actionable under the federal securities laws "only when the [defendant] is subject to a duty to disclose the omitted facts."  *In re Lions Gate Ent. Corp. Sec. Litig.*, 165 F. Supp. 3d 1, 11 (S.D.N.Y. 2016).  A duty to disclose arises where the omitted information is both material and necessary "to make the statements made, in the light of the circumstances under which they were made, not misleading[.]"  17 C.F.R. § 240.10b-5(b).  Absent a duty to disclose, there is no liability under Sections 11 or 10(b).  *See, e.g.*, *In re Morgan Stanley Tech. Fund Sec. Litig.*, 643 F. Supp. 2d 366, 375 (S.D.N.Y. 2009) (no Section 11 liability for omission "even if the [omitted] information would have been material"), *aff'd*, 592 F.3d 347 (2d Cir. 2010); *In re Optionable Sec. Litig.*, 577 F. Supp. 2d 681, 692 (S.D.N.Y. 2008) (no Section 10(b) liability for omission even if "a reasonable investor would very much like to know that fact").

Here, there was no duty to disclose.  The Complaint relies exclusively on allegations that the Registration Statement disclosed the issuance and exercise of the Series F Warrant but did not disclose its fair value at the time of that issuance (*see* ¶¶73-81), but there was no duty to disclose fair value because the Series F Warrant was issued in Q4 2020, the quarter ***after*** the Q3 2020 period to which the Registration Statement was expressly limited.  *Supra* § (I)(B)(2); Ex. 1 at 13, 32, 100, 103, F-99, F-124.  The Series F Warrant was not issued until ***November 2020*** (¶73), and therefore was not yet in existence to be assigned a fair value when Q3 ended on September 30, 2020.  Nor was there any duty to disclose a purported loss associated with the Series F Warrant where that purported loss is based on the difference in fair value between November 13, 2020 and December 31, 2020, both dates in Q4 2020.  ¶¶4, 79.

11

Moreover, the Registration Statement disclosed that warrant liabilities had been increasing for a year leading up to the IPO, cutting against any obligation to further disclose.  Ex. 1 at 118, 123 (disclosing that the fair value of warrant liabilities had increased "significantly" from September 30, 2019 to September 30, 2020); *see Pinduoduo*, 2021 WL 3871269, at *3-4 (disclosing that marketing expenses had been "steadily and exponentially increasing" from 2016 to IPO in July 2018).  Cloopen's affirmative disclosures regarding its warrant liabilities and references to certain events post-dating its Q3 2020 results, limited to a description of the Series F Warrant, the aggregate principal amount and exercise price, rights of the warrant holder, and the exercise date, do not trigger a broad duty to disclose every detail relating to that warrant.  *See Wandel*, 2022 WL 768975, at *11 (no duty to disclose specific details about strategy changes just because the registration statement generally referenced strategy changes (citing *Richman v. Goldman Sachs Grp., Inc.*, 868 F. Supp. 2d 261, 274 (S.D.N.Y. 2012) ("[R]evealing one fact about a subject does not trigger a duty to reveal all facts on the subject, so long as what was revealed would not be so incomplete as to mislead.")); *supra* § (I)(B)(2).  Cloopen is not aware of any case holding that companies must disclose warrant liabilities for ***unreleased periods*** when they report, as did Cloopen, that changes in estimated fair value would be made each reporting period and reflected in the company's financial statements.  *See* Ex. 1 at F-19. Nor is there any misleading statement concerning the Series F Warrant given the disclosure that an assessment of estimated fair value would be conducted and any changes reported every quarter.  *See id.*

Therefore, Plaintiff fails to allege an actionable statement or omission regarding the Series F Warrant.

        4.    <u>Statements Regarding Growth Strategies and Customer Retention</u>

Plaintiff fails to allege a material misstatement or omission regarding growth strategies or customer retention (¶¶82-104) because (1) Cloopen's statements were not false or misleading when considered with full context, (2) Cloopen disclosed the very information Plaintiff contends was omitted, and (3) the challenged statements are non-actionable opinions, puffery, and/or protected forward-looking statements.

        a)    *Cloopen's Actual Statements Were Not False or Misleading*

The Complaint allegations that purport to explain how the Registration Statement was misleading rely on out-of-context mischaracterizations.  *See, e.g.*, ¶¶6, 82, 86, 100.  As reflected in the full quotes of the Registration Statement, in context, Cloopen's actual statements were neither false nor misleading.  Plaintiff "may not cherry pick certain public statements for [his] complaint and divorce them from the universe of disclosed information to plausibly allege fraud."  *In re Wells Fargo & Co. Sec. Litig.*, 2021 WL 4482102, at *9 (S.D.N.Y. Sept. 30, 2021) (quoting *In re Synchrony Fin. Sec. Litig.*, 988 F.3d 157, 171 (2d Cir. 2021)); *Willard v. UP Fintech Holding Ltd.*, 527 F. Supp. 3d 609, 622 (S.D.N.Y. 2021) (allegations that "appear nowhere in the Registration Statement" but were rather "Plaintiffs' own characterizations" could not form the basis of claims).  Furthermore, Cloopen was "not obligated to characterize its performance or future outlook in negative terms, speculate on future negative results or paint [itself] in the most unflattering light possible."  *See Solow v. Citigroup, Inc.*, 2012 WL 1813277, at *4 (S.D.N.Y. May 18, 2012), *aff'd*, 507 F. App'x 81 (2d Cir. 2013); *Scott v. Gen. Motors Co.*, 46 F. Supp. 3d 387, 397 (S.D.N.Y. 2014) (companies "need not cloak the company's [sales and revenue] outlook in overt negative terms"), *aff'd*, 605 F. App'x 52 (2d Cir. 2015).

Plaintiff claims that the Registration Statement "misrepresented the strength of Cloopen's 'diverse and loyal customer base' and how Cloopen's 'land and expand' strategy . . . ***was***

*working* to retain existing customers at the time of the IPO." ¶82;[7] *see also* ¶6 (alleging that Cloopen "misled investors into believing that Cloopen's . . . growth strategy . . . *was effective* at the time of the IPO"). But nowhere in the Registration Statement did Cloopen represent that its "land and expand" strategy "*was working*" or "*was effective*" as of the IPO. Rather, Cloopen said "*we have implemented* a 'land and expand' strategy by which we encourage our customers to explore and expand into other solutions leveraging our multi-capability offering mix." ¶¶86, 100; Ex. 1 at 145, 159. Notably absent are any allegations to show the falsity of these actual statements, *i.e.*, that Cloopen had not implemented its "land and expand" strategy as described. *See* ¶¶82-90. Likewise, Cloopen did not state that its strategy "was working" to retain and expand its customer base. ¶82. Rather, it stated its beliefs about the strategy's "potential" and Cloopen's "plan". *E.g.*, ¶¶86 (disclosing belief in "cross-selling and up-selling potential"), 100 (same), 99 (disclosing "plan to expand our cross-selling"), 102 (disclosing "expect[ation]" that net customer retention rate would "remain stable at a relatively high level" subject to certain conditions).

Plaintiff next alleges that the Registration Statement "claimed that Cloopen's sales and marketing team enjoyed '*considerable opportunities*' to cross-sell and up-sell Cloopen's solutions to its 'diverse and loyal customer base,' which represents only 'a small fraction of [Cloopen's] total addressable market in China[.]'" ¶83. Even if the phrase "considerable opportunities" appeared in the Registration Statement, which it does not, nothing about the statement is false. Cloopen's products are all within its "suite of cloud-based communications solutions" (Ex. 1 at 1) and, given its undisputedly high dollar-based net customer retention rate,

---

[7] All emphases in the Argument section are added.

which allegedly bottomed out at 86.8% (¶¶122, 177), Cloopen had reason to believe that it would have opportunities to grow by selling new solutions to existing customers.

Cloopen also did not claim to have or guarantee in the future a "steady revenue stream from repeat customers" or an "ability to maintain, a dollar-based net customer retention rate of more than 94%." ¶83. The Registration Statement actually states: "*We believe* that we have strong customer acquisition capability *while maintaining* a steady revenue stream from repeat customers." Ex. 1 at 106. This statement is not actionable under the securities laws on multiple bases, including that it is a sincerely held statement of opinion, forward-looking, and an unactionable statement of corporate optimism. *Infra* § (I)(B)(4)(c).

In substance, Plaintiff does not allege that Cloopen did not honestly believe that its revenues from repeat customers had been "steady," and that characterization is in line with Cloopen's retention rates. Plaintiff rests his theory on the absence of Cloopen's Q4 2020 net customer retention rate in the Registration Statement. ¶¶85, 87-90, 95-104. However, Cloopen was under no obligation to disclose Q4 metrics at the time of its IPO. *Supra* § (I)(B)(2). And importantly, no specific facts are alleged to contradict Cloopen's actual statements or indicate that Cloopen's beliefs and expectations regarding customer retention were not legitimate. Indeed, the Registration Statement disclosed a historical decline in Cloopen's net customer retention rate. ¶¶86, 88, 90, 98 (disclosing that rate fell from 135.7% in 2018 to 102.7% in 2019 to 94.7% in the first nine months of 2020). Plaintiff pleads no facts to suggest that the 86.8% dollar-based net customer retention rate for FY2020 (¶¶122, 177) was not consistent with Cloopen's beliefs and characterizations of its prospects given the disclosed decline. And Cloopen's disclosure of the alleged "more favorable net customer retention metric as of September 30, 2020" in the Registration Statement (¶9)—a metric that Plaintiff does not allege

was false—does not give rise to a claim under the federal securities laws. *See, e.g.*, *Nadoff v. Duane Reade, Inc.*, 107 F. App'x 250, 252 (2d Cir. 2004) ("Accurate statements about past performance are self evidently not actionable under the securities laws[.]").

In any event, an allegation that a company's growth strategies "w[ere] not successful does not give rise to securities violations." *In re Weight Watchers Int'l Inc. Sec. Litig.*, 504 F. Supp. 3d 224, 250 (S.D.N.Y. 2020). A short-term decline in the net customer retention rate does not alone imply that Cloopen's beliefs about its prospects were not honest or legitimate given that the metric was defined to apply only to solutions offered on a ***recurring*** basis, Ex. 1 at 8, and does not account for ***project-based*** services. In other words, it accounts for only one part of Cloopen's business, not its entire client base or revenue stream. Indeed, the Registration Statement discloses that project-based revenues from Cloopen's cloud-based CC solutions increased by 89.1% for the nine-month period ended September 30, 2020 as compared to the same period in 2019, contradicting Plaintiff's allegations. Ex. 1 at 116; *see id.* at 19 (Cloopen derives "significant" revenue from project-based solutions).

### b) *Cloopen Disclosed the Allegedly Omitted Information*

Plaintiff's omissions theory centers on Cloopen's alleged failure to disclose that its sales strategies were "not working" due to its allegedly shrinking customer base, as reflected by its declining dollar-based net customer retention. *See, e.g.*, ¶111. These allegations are refuted by the Registration Statement, which disclosed the precise percentage declines in the net customer retention rate between 2018 and the first nine months of 2020. ¶122; *see supra* pp. 3-4. Cloopen's post-IPO disclosures were nothing more than a continuation of that disclosed decline. *See* Exs. 2, 3.

Therefore, the allegation that the market was "shocked" (¶13) by Cloopen's Q4 2020 results showing a decrease in the net customer retention rate is "overwrought" and implausible

given that "any reasonable investor . . . would have been well aware" of that decline from pre-IPO disclosures.  *See UP Fintech*, 527 F. Supp. 3d at 622 (finding no duty to disclose decreased trading volume in registration statement because company saw similar drop three quarters earlier).  Courts regularly grant motions to dismiss where, as here, the at-issue registration statement warns of the allegedly omitted risks or declines.  *See, e.g.*, *Olkey v. Hyperion 1999 Term Tr., Inc.*, 98 F.3d 2, 9 (2d Cir. 1996); *In re Britannia Bulk Holdings Inc. Sec. Litig.*, 665 F. Supp. 2d 404, 416-17 (S.D.N.Y. 2009); *Ladmen Partners, Inc. v. Globalstar, Inc.*, 2008 WL 4449280, at *14 (S.D.N.Y. Sept. 30, 2008).

*c)*      *The Challenged Statements Are Non-Actionable*

(1)      <u>Non-Actionable Opinions</u>

Opinions are actionable only if the speaker did not hold the belief professed, supplied untrue supporting facts, or omitted information whose omission made the statement misleading.  *Woolgar v. Kingstone Cos., Inc.*, 477 F. Supp. 3d 193, 223 (S.D.N.Y. 2020) (insufficient "to allege that an opinion was unreasonable, irrational, excessively optimistic, or not borne out by subsequent events") (citation omitted); *see also Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 185-86, 194 (2015).  Plaintiff does not allege anything along these lines.

Several challenged statements are classic opinions:

- "***We believe*** there is considerable cross-selling and up-selling ***potential*** as customers tend to stay with us due to the critical role our solutions play in their business operations." ¶100; Ex. 1 at 145.

- "***We expect*** that, as the applicable regulatory framework becomes more established and China's economy recovers from the COVID-19 pandemic, and ***as we*** continuously optimize our existing solutions and develop new features and solutions, our dollar-based

17

net customer retention rate will remain stable at a relatively high level."  ¶102; Ex. 1 at 104.

- "*We believe* our current customer base only represents a small fraction of our total addressable market in China."  ¶89; Ex. 1 at 147.

- "*We believe* our capabilities in attracting and retaining these large-enterprise customers rest on our ability to develop and offer industry-specific features and functionalities that satisfy their disparate needs and complex internal deployment and integration requirements."  ¶86; Ex. 1 at 146, 158.

- "*We believe* our success to date is primarily attributable to the following key competitive strengths. . . . diverse and loyal customer base."  Ex. 1 at 2-3; *see* ¶82.

Beliefs and expectations are statements of opinion, not fact.  *See, e.g.*, *In re Fairway Grp. Holdings Corp. Sec. Litig.*, 2015 WL 4931357, at *17 (S.D.N.Y. Aug. 19) ("expressions of defendants' expectations for future growth" are opinions), *report & recommendation adopted*, 2015 WL 5255469 (Sept. 9, 2015); *Altayyar v. Etsy, Inc.*, 731 F. App'x 35, 38 (2d Cir. 2018) (affirming dismissal of "we believe that our strength and business success rest in the interdependence among . . . our community" as opinion).  Statements concerning a company's business potential, including strategies to grow, are also opinions.  *Fairway*, 2015 WL 4931357, at *17-20.

Plaintiff pleads no facts showing that Cloopen's opinions about customers and growth were objectively false or disbelieved when made.  *See Altayyar v. Etsy, Inc.*, 242 F. Supp. 3d 161, 174 (E.D.N.Y. 2017), *aff'd*, 731 F. App'x 35 (2d Cir. 2018); *supra* § (I)(B)(4)(a).  No allegation suggests that Cloopen did not honestly believe in its prospects and strategies as stated

in the Registration Statement, nor that Cloopen was not following its stated strategies or that its beliefs would be impossible to achieve.

(2)    <u>Non-Actionable Statements of Corporate Optimism</u>

Plaintiff also challenges "expressions of puffery and corporate optimism [that] do not give rise to securities violations." *Rombach*, 355 F.3d at 174.  Plaintiff challenges the following statements that are all non-actionable puffery:

- "We believe there is ***considerable*** cross-selling and up-selling ***potential*** as customers tend to stay with us due to the critical role our solutions play in their business operations." ¶100; Ex. 1 at 145.

- "The constantly evolving communication needs of our customers present a ***significant opportunity*** for us to expand sales to our existing customers."  ¶89; Ex. 1 at 147.

- "We believe that we have ***strong customer acquisition capability*** while maintaining a steady revenue stream from repeat customers."  Ex. 1 at 106; *see* ¶103.

- Statements that describe Cloopen's customer base as "***loyal***" and state that Cloopen's "***loyal*** customer base" is a "competitive ***strength***[]."  Ex. 1 at 2-3, 100, 142, 146; *see* ¶¶82-83.

Vague optimistic statements about a company's prospects like those set forth above are non-actionable puffery as a matter of law.  *See, e.g.*, *Globalstar*, 2008 WL 4449280, at *13 (dismissing as puffery statements that "[w]e believe we are able to retain our current customers and attract new customers" and about "expected growth"); *Rudman v. CHC Grp. Ltd.*, 217 F. Supp. 3d 718, 728 (S.D.N.Y. 2016) (dismissing statements about "'strong' relationships with" customers).

19

(3)     Non-Actionable Forward-Looking Statements

Many of the alleged misstatements are also non-actionable forward-looking statements protected by the bespeaks caution doctrine, which provides that such statements are immaterial and not actionable as a matter of law where "balanced by cautionary language within the same prospectus such that no reasonable investor would be misled about the nature and risk of the offered security." *P. Stolz Family P'ship L.P. v. Daum*, 355 F.3d 92, 96 (2d Cir. 2004).

Plaintiff challenges many forward-looking statements with terms such as "we intend," "we plan," "[w]e expect," and "potential" that clearly look to the future.  ¶¶84, 86-87, 89, 99-100, 102, 120.  Courts regularly hold that statements related to future performance and planned "growth strateg[ies]" are forward-looking.  *E.g.*, *Fairway*, 2015 WL 4931357, at *14-17 (growth strategies were forward-looking); *Globalstar*, 2008 WL 4449280, at *16 (statements regarding expected ability to retain and attract customers were forward-looking); *Pehlivanian v. China Gerui Advanced Materials Grp., Ltd.*, 153 F. Supp. 3d 628, 648-49 (S.D.N.Y. 2015) (dismissing statements regarding future growth strategies as forward-looking, and "even if actionable" dismissing statements as "true").

Because Cloopen's forward-looking statements were accompanied by extensive warnings, *see supra* pp. 4-5, they are protected under the bespeaks caution doctrine.  *See Fairway*, 2015 WL 4931357, at *14-17 (finding similar disclosures and risk factors about future growth sufficient to protect statements).

5.     Statements Regarding Customer Payments

Plaintiff alleges that Cloopen's detailed warnings about the risk of customer non-payment (¶105) were materially false and misleading because "an increasing number of customers were not paying for the services and/or solutions provided" as evidenced by "increases in its accounts receivable and its allowance for doubtful accounts[.]"  ¶106.  The Complaint alleges vaguely that

the risk of customer non-payment had "already occurred" (¶107; *see also* ¶12) but fails to

confront that the Registration Statement disclosed the materialization of that very risk. *Supra* p.

3 (citing disclosures of increasing accounts receivable and allowances for doubtful accounts over

the seven quarters prior to Q4 2020).

Given Cloopen's robust disclosures, Cloopen was under no further duty to disclose either

the increasing customer non-payments or the risk that they would continue. *See, e.g.*, *Nguyen v.*

*MaxPoint Interactive, Inc.*, 234 F. Supp. 3d 540, 543, 547-48 (S.D.N.Y. 2017) (no duty to

disclose more details about reliance on small customer base given the "clear notice" provided by

the offering documents); *Schoenhaut v. Am. Sensors, Inc.*, 986 F. Supp. 785, 793 (S.D.N.Y.

1997) (omission of decreased sales immaterial given warnings that customers varied and the loss

of a large customer could materially affect the company).  Separately, Cloopen had no duty to

disclose metrics for the unreleased Q4 2020 period that was expressly outside the scope of the

Registration Statement.  *Supra* § (I)(B)(2).  Thus, the Complaint's allegations of omitted Q4

customer payment metrics are deficient.

The Complaint also fails to identify any facts showing that Cloopen was aware at the

time of the Registration Statement of any changes to its customers' business and financial

conditions (or to Cloopen's own conditions) that would materially affect its customers' ability to

pay.  Therefore, the Complaint does not dispute the accuracy of any disclosed customer payment

metrics or of the associated disclosed risks, nor Cloopen's belief that its sales efforts would

ultimately succeed.  The Complaint also fails to specify how increasing allowances for doubtful

accounts negatively affected Cloopen's business—for instance, the Complaint does not address

whether it is normal to experience increases in certain customer non-payment metrics when

growing as rapidly as Cloopen was at the time of the IPO, nor whether Cloopen had any

concurrent increases in sales to its paying customers or to new customers to make up for any portion of its increasing allowance for doubtful accounts.  The Complaint's generalized allegations about customer non-payment cannot survive a motion to dismiss.

6.      Plaintiff Fails to Plead a Violation of Item 303

Item 303 of SEC Regulation S-K requires registrants to describe "any known trends . . . the registrant reasonably expects will have a material . . . impact on net sales or revenues or income." *Stadnick,* 861 F.3d at 39 (citation omitted).  As discussed above, Plaintiff's alleged omissions are not actionable, and thus, do not support a violation of Item 303.  ¶¶108-12; *see supra* § (I)(B)(4)-(5); *Wandel*, 2022 WL 768975, at *11 ("Items 105 and 303 cannot save Plaintiffs' hindsight pleading when that pleading did not hurdle the requirements of Section 11 of the Securities Act.").  In addition, "Item 303 is not applicable at all to a registration statement on Form F-1." *Luo v. Sogou, Inc.*, 465 F. Supp. 3d 393, 413 (S.D.N.Y. 2020).  And even if Item 303 applied, the Q4 2020 metrics are not sufficient to constitute a material trend under Item 303. *MaxPoint*, 234 F. Supp. 3d at 546 ("[E]vents occurring within a two month period of time do not establish a 'trend' for purposes of the disclos[ures] required by Item 303.").  In any event, the Registration Statement disclosed the supposedly omitted "trends" of increasing warrant liabilities, decreasing net customer retention rate, and increasing allowances for doubtful accounts. *Supra*, pp. 3-4; *Coty*, 2016 WL 1271065, at *5-10; *Arfa v. Mecox Lane Ltd.*, 2012 WL 697155, at *9-10 (S.D.N.Y. Mar. 5) (no Item 303 violation where disclosures reflected the allegedly omitted trends of declining growth and increased expenses), *aff'd*, 504 F. App'x 14 (2d Cir. 2012).

7.      Plaintiff Fails to Plead a Violation of Item 105

Plaintiff also fails to state a claim under Item 105 based on the risks Cloopen disclosed regarding its warrant liabilities, growth strategies, customer retention, and customer payments.

*See* ¶¶91-97, 105, 107, 114.  As explained, the Registration Statement disclosed extensive, on-point risks related to its future warrant liabilities, customer retention, growth, and receivables. *Supra* pp. 4-5.  These are sufficient to satisfy Item 105.  *See Lau v. Opera Ltd.*, 527 F. Supp. 3d 537, 555-56 (S.D.N.Y. 2021) (Koeltl, J.).

### C.    Plaintiff Alleges No Actionable Post-IPO Misstatement or Omission

Plaintiff's heavy reliance on post-IPO disclosures is misplaced.  ¶¶115-26.  Plaintiff cannot rely on events post-dating the IPO to contend that Cloopen should have made different disclosures at the time of its IPO.  *Coty*, 2016 WL 1271065, at *8; *Woolgar*, 477 F. Supp. 3d at 225-26 (plaintiffs may not "rely[] on allegations that defendants should have anticipated future events and made certain disclosures earlier than they actually did") (citation omitted).  But hindsight is all that Plaintiff attempts to invoke here.  For example, Plaintiff cites Cloopen's Q4 2020 results to contradict the disclosures in the Registration Statement (*e.g.*, ¶¶115-20), without pleading that those results were known at the time of the IPO, and even though the Registration Statement does not purport to speak to Cloopen's Q4 2020 results.  *See supra* § (I)(B)(2).

The remaining post-IPO allegations about events in May 2022 (over a year after the IPO) are equally deficient.  Plaintiff vaguely alleges that undefined "additional questions" were raised by the announcement that Cloopen formed an independent committee "to investigate certain employee misconduct and transaction irregularities and the issues that were brought to the Board's attention by KPMG[.]"  ¶19.  Plaintiff also points to a letter from the New York Stock Exchange ("NYSE") to Cloopen regarding its listing status and the resignations of KPMG and Board members Chiu and Liu.  ¶¶125-26.  These conclusory allegations cannot support Plaintiff's claims because the Complaint fails to connect the internal investigation, listing status, or resignations to any specific alleged acts of fraud.  *See N. Collier Fire Control & Rescue Dist. Firefighter Pension Plan & Plymouth Cnty. Ret. Ass'n v. MDC Partners, Inc.*, 2016 WL

5794774, at *21 (S.D.N.Y. Sept. 30, 2016) (refusing "to draw an inference of fraud" from "abrupt[]" resignations of executive defendants several months after class period during the course of an SEC investigation, after disclosing formation of special committee).  Plaintiff does not even attempt to explain how or why these post-IPO allegations support his theory of fraud. The Court should disregard the allegations as conclusory and deficient under the PSLRA.

## II.   PLAINTIFF'S SECTION 10(B) CLAIM INDEPENDENTLY FAILS FOR FAILURE TO PLEAD SCIENTER

As Plaintiff has failed to plead an actionable misstatement or omission, the Court need not consider the Complaint's scienter allegations.  *See Pinduoduo*, 2021 WL 3871269, at *4 & n.6.  Plaintiff's failure to allege a false statement or material omission necessarily undercuts any inference that Cloopen, Changxun Sun, or Yipeng Li ("Exchange Act Defendants") acted with the requisite scienter in making the challenged statements.  *E.g.*, *La Pietra v. RREEF Am., L.L.C.*, 738 F. Supp. 2d 432, 445 (S.D.N.Y. 2010) (Koeltl, J.) ("Because the amended complaint fails to allege sufficiently that the defendants made any false or misleading statements (either affirmatively or through omissions), [it] also fails to establish an inference of reckless or conscious misbehavior on the part of the defendants in making such statements."); *Plumbers' Union Loc. No. 12 Pension Fund v. Swiss Reinsurance Co.*, 753 F. Supp. 2d 166, 185 (S.D.N.Y. 2010) (Koeltl, J.) (same).  Nonetheless, Plaintiff's failure to plead particularized facts raising any inference of scienter—let alone the required "strong" or "cogent" inference—provides an independent basis for dismissal.  *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319 (2007).

For a Section 10(b) claim to survive dismissal, Plaintiff must plead with particularity facts supporting a "strong inference" of scienter, which is "a mental state embracing intent to deceive, manipulate, or defraud."  *Id.* at 319-23 (citation omitted).  That inference "must be more

than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Id.* at 314.  Scienter "can be established by alleging facts to show either (1) that defendants had the motive and opportunity to commit fraud, or (2) strong circumstantial evidence of conscious misbehavior or recklessness." *ECA*, 553 F.3d at 198.  Plaintiff has not sufficiently pleaded either prong.

For motive and opportunity, Plaintiff must show that the Exchange Act Defendants "benefitted in some concrete and personal way from the purported fraud[.]" *ECA*, 553 F.3d at 198 (citation omitted).  Here, the Complaint does not allege that Messrs. Sun or Li sold their Cloopen shares during the class period, negating any inference of scienter.  *See, e.g.*, *Town of Davie Police Officers Ret. Sys. v. City of N. Miami Beach Police Officers' & Firefighters' Ret. Plan*, 2021 WL 5142702, at *2 (2d Cir. Nov. 5, 2021) (affirming dismissal for lack of scienter where plaintiffs fail to allege that any individual defendants sold stock during the class period).

As such, Plaintiff must allege "correspondingly greater" circumstantial evidence of conscious misbehavior or recklessness.  *ECA*, 553 F.3d at 198-99 (citation omitted).  Plaintiff must show that the Exchange Act Defendants engaged in "conduct which is highly unreasonable and which represents an extreme departure from the standards of ordinary care[.]" *Shemian v. Research In Motion Ltd.*, 570 F. App'x 32, 35 (2d Cir. 2014) (citation omitted).  This must evidence "a state of mind approximating actual intent[.]" *Stratte-McClure v. Morgan Stanley*, 776 F.3d 94, 106 (2d Cir. 2015) (citation omitted).  Critically, where Plaintiff contends that the Exchange Act Defendants had access to contrary facts, he "must specifically identify the reports or statements containing this information." *Weight Watchers*, 504 F. Supp. 3d at 259 (citation omitted).  "Conclusory statements that [D]efendants 'were aware' of certain information" are insufficient.  *Glaser v. The9, Ltd.*, 772 F. Supp. 2d 573, 591 (S.D.N.Y. 2011).

Here, Plaintiff generally contends that the Exchange Act Defendants acted with scienter "by virtue of their receipt of information reflecting the true facts regarding Cloopen, their control over, and/or receipt and/or modification of Cloopen's allegedly materially misleading misstatements and/or their associations with Cloopen which made them privy to confidential proprietary information concerning Cloopen." ¶178.  Plaintiff assumes the Exchange Act Defendants had knowledge of or access to contrary information, *see* ¶¶179-82, but crucially, Plaintiff never once identifies "***specific instances*** in which [any] [d]efendants received information that was contrary to their public declarations." *Plumbers & Steamfitters Loc. 773 Pension Fund v. Canadian Imperial Bank of Com.*, 694 F. Supp. 2d 287, 299 (S.D.N.Y. 2010) (emphasis added).[8]

Such conclusory, "boilerplate" assertions are routinely rejected by the courts as insufficiently particularized to support an inference of scienter.  *See, e.g.*, *Steinberg v. Ericsson LM Tel. Co.*, 2008 WL 5170640, at *12-13 (S.D.N.Y. Dec. 10, 2008) (rejecting as "boilerplate" allegations that the adverse information "was contained in various internal corporate documents . . . and via reports and internal non-public reports"); *Jackson v. Halyard Health, Inc.*, 2018 WL 1621539, at *8-9 (S.D.N.Y. Mar. 30, 2018) (no scienter where plaintiff failed to "specifically plead facts demonstrating or supporting plausibly an inference that [the individual defendant] was personally informed or would reasonably have been informed about any alleged issues").

---

[8] To the extent that Plaintiff assumes that Messrs. Sun or Li should have been aware of information by virtue of their positions, "[c]ourts in this Circuit have long held that accusations founded on nothing more than a defendant's corporate position are entitled to no weight." *Canadian Imperial Bank*, 694 F. Supp. 2d at 300.

As for the Series F Warrant, the Complaint's sole allegation relating to the Exchange Act Defendants' knowledge is that the warrant was fully exercised on January 7, 2021.  ¶182.  First, as shown above, because there was no duty to disclose Q4 metrics, *see supra* § (I)(B)(2)-(3), this undermines any inference that the Exchange Act Defendants acted with conscious misbehavior or recklessness in the alleged omission.  *See Kalnit v. Eichler*, 264 F.3d 131, 144 (2d. Cir. 2001) (no scienter with respect to alleged omission where the facts do not indicate a clear duty to disclose).  Second, even if there were a duty to disclose the warrant's fair value on the date of issuance, the Complaint is still devoid of any facts that either Messrs. Sun or Li had specific knowledge of the fair value as of its issuance or understood that not disclosing that fair value was misleading.  *See Canadian Imperial Bank*, 694 F. Supp. 2d at 299 (requiring scienter allegations to show "***specific instances*** in which Defendants received information") (emphasis added).

The Complaint also alleges that in May 2022 Cloopen announced the formation of an independent special committee relating to employee misconduct and transaction irregularities, which were brought to the Board's attention by the resignation of Cloopen's auditor.  ¶125.  That Cloopen acted when it learned of potential irregularities in the accounting process over a year after the IPO negates any inference of scienter.  *See City of Brockton Ret. Sys. v. Avon Prods., Inc.*, 2014 WL 4832321, at *33 (S.D.N.Y. Sept. 28, 2014) ("[T]hat Avon announced that it was commencing an internal investigation . . . supports an inference that Defendants had not been aware of inadequacies in Avon's compliance programs before learning of the potential violations."); *see also Salim v. Mobile Telesystems PJSC*, 2021 WL 796088, at *14 (E.D.N.Y. Mar. 1, 2021) ("[T]hat [the company] commenced an internal investigation tends to undermine any inference of scienter.") (citation omitted), *aff'd*, 2022 WL 966903 (2d Cir. Mar. 31, 2022). Plaintiff's auditor-resignation allegations fail to allege that any senior Cloopen official was

aware of misconduct or transaction irregularities prior to the audit.  This also fails to support any inference of scienter.  *See In re Intelligroup Sec. Litig.*, 527 F. Supp. 2d 262, 348 (D.N.J. 2007) (dismissing where plaintiffs failed to explain how auditor's resignation shed any light on scienter); *In re Maxwell Techs., Inc. Sec. Litig.*, 18 F. Supp. 3d 1023, 1039-40 (S.D. Cal. 2014) (auditor resignation did not include any indication that auditor believed individual defendants "engaged in the misconduct" nor evidence "suggest[ing] that [auditor] had any information about what [either individual defendant] knew about the misconduct.").

Finally, allegations regarding other post-IPO developments such as Board resignations or receipt of a letter from the NYSE, more than one year after the IPO, do not suggest that Cloopen's senior officers had knowledge of any issues as of the IPO.  *See* ¶126.  Such "fraud by hindsight" theories do not support an inference of scienter.  *See In re Aceto Corp. Sec. Litig.*, 2019 WL 3606745, at *4 (E.D.N.Y. Aug. 6, 2019); *Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 53 (2d Cir. 1995) ("[D]efendants' lack of clairvoyance simply does not constitute securities fraud.").

Because Plaintiff has failed to allege scienter as to either Messrs. Sun or Li, the deficient pleadings also fail to allege scienter as to Cloopen.  *See Jackson v. Abernathy*, 960 F.3d 94, 98-99 (2d Cir. 2020) (no scienter as to the corporate defendant where complaint fails to allege scienter as to the corporate defendant's "senior officers").

## III.    THE CONTROL PERSON CLAIMS SHOULD BE DISMISSED

Because Plaintiff alleges no underlying violations, his control person claims under Sections 15 of the Securities Act and 20(a) of the Exchange Act must also be dismissed.  *See In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 366 (2d Cir. 2010); *ATSI*, 493 F.3d at 108.  In any event, the Section 20(a) claim fails because Plaintiff has not alleged, as required, any culpable participation by defendants in any alleged violation.  *See ATSI*, 493 F.3d at 108.

## **CONCLUSION**

For the foregoing reasons, Cloopen respectfully requests that the Complaint be dismissed with prejudice in its entirety.

Dated: July 15, 2022                    Respectfully submitted,

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

*s/ Sheryl Shapiro Bassin*
Sheryl Shapiro Bassin
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Telephone: (212) 999-5800
Facsimile: (212) 999-5899
Email: sbassin@wsgr.com

Ignacio E. Salceda (admitted *pro hac vice*)
650 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 493-9300
Facsimile: (650) 493-6811
Email: ISalceda@wsgr.com

*Counsel for Defendant Cloopen Group Holding Limited*

<u>**CERTIFICATE OF COMPLIANCE**</u>

Pursuant to Section II.D of the Court's Individual Practices and the Court's Order at ECF

No. 90, the undersigned certifies that this brief contains 8,497 words and complies with the

Court's formatting rules.

Dated: July 15, 2022                                Respectfully submitted,

                                                    WILSON SONSINI GOODRICH & ROSATI
                                                    Professional Corporation

                                                    <u>*s/ Sheryl Shapiro Bassin*</u>
                                                    Sheryl Shapiro Bassin
                                                    1301 Avenue of the Americas, 40th Floor
                                                    New York, New York 10019
                                                    Telephone: (212) 999-5800
                                                    Facsimile: (212) 999-5899
                                                    Email: sbassin@wsgr.com

                                                    Ignacio E. Salceda (admitted *pro hac vice*)
                                                    650 Page Mill Road
                                                    Palo Alto, California 94304
                                                    Telephone: (650) 493-9300
                                                    Facsimile: (650) 493-6811
                                                    Email: ISalceda@wsgr.com

                                                    *Counsel for Defendant Cloopen Group Holding*
                                                    *Limited*