# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BOYAN DONG, Individually and On Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>  v.<br><br>CLOOPEN GROUP HOLDING LIMITED, CHANGXUN SUN, YIPENG LI, KUI ZHOU, QINGSHENG ZHENG, XIAODONG LIANG, ZI YANG, MING LIAO, FENG ZHU, LOK YAN HUI, JIANHONG ZHOU, CHING CHIU, XIEGANG XIONG, CHENG LUO, YUNHAO LIU, COGENCY GLOBAL INC., COLLEEN A. DEVRIES, GOLDMAN SACHS (ASIA) L.L.C., CITIGROUP GLOBAL MARKETS INC., CHINA INTERNATIONAL CAPITAL CORPORATION HONG KONG SECURITIES LIMITED, TIGER BROKERS (NZ) LIMITED, and FUTU INC.,<br><br>    Defendants. | Case No.: 1:21-cv-10610-JGK<br><br><br>**LEAD PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS THE AMENDED COMPLAINT** |

**TABLE OF CONTENTS**

I. SUMMARY OF ARGUMENT ........................................................................... 1

II. FACTUAL ALLEGATIONS ............................................................................ 3

III. ARGUMENT...................................................................................................... 4

  A. Rule 9(b) Is Inapplicable to Plaintiff's Section 11 Claims and, Even If It Were, Plaintiff Easily Satisfies That Standard.................................... 4

  B. Plaintiff Alleges Actionable Statements in the Registration Statement.................. 5

    1. Plaintiff's Allegations Are Pled with Specificity........................................ 5

    2. Plaintiff Has Alleged Actionable Omissions About the Series F Warrant ........................................................................................... 7

      a. Cloopen's Discussion of the Series F Warrant in the "Subsequent Events" Section of the Financial Statements Included in the Registration Statement Created a Duty to Disclose Material Facts About The Issuance of the Series F Warrant ......................................................................... 7

      b. Cloopen's Selective Disclosure of Facts about the Exercise of the Series F Warrant Violated Its Disclosure Duty and ASC 855 by Failing to Disclose An Estimate of Its Financial Effect ..... 9

      c. Cloopen's Selective Disclosure of Facts about the Series F Warrant Was So Incomplete as to Mislead.................................. 10

    3. Plaintiff Has Alleged Actionable Omissions About Customer Retention.......................................................................................... 12

      a. The Registration Statement Omitted the Material Existing Fact of a 30% Drop in Dollar-Based Net Customer Retention Rate in Q4 2020, Which Made Statements About Customer Retention and Expansion in the Registration Statement Materially Misleading.................................... 12

      b. Cloopen's Statements of Belief Which Omit the Existing Fact of a 30% Drop in the Dollar-Based Net Customer Retention Rate in Q4 2020 Make Those Beliefs Misleading........................ 15

      c. Cloopen's Specific Factual Statements About Customer Retention Are Not Puffery........................................................... 16

d.      Cloopen's Statements Are Not Non-Actionable Forward-Looking Statements........................................................... 17

e.      Cloopen's "Risk" Warnings Were Misleading Because the Risk Had Already Occurred.................................................... 18

4.      Cloopen's Statements About Customer Non-Payment Are False and Misleading by Omitting the Then Existing Q4 2020 Material Customer Non-Payment................................................................. 19

C.      Plaintiff Alleged Violations of Item 303 and 105................................................. 20

D.      Plaintiff Properly Relied on Defendants' Post-IPO Admissions .......................... 21

E.      The Cogency Defendants' Arguments Lack Merit................................................ 22

F.      Plaintiff Has Adequately Pled Scienter................................................................. 23

1.      Applicable Pleading Standard................................................................... 23

2.      Plaintiff Adequately Alleges Strong Circumstantial Evidence of Recklessness of Conscious Misbehavior ................................................... 23

G.      Plaintiff Has Sufficiently Pled Control Person Liability ...................................... 28

IV.      CONCLUSION................................................................................................................. 28

## TABLE OF AUTHORITIES

<u>Cases</u>                                                                                                                          <u>Page(s)</u>

*Basic Inc. v. Levinson*,
    485 U.S. 224 (1988)......................................................................................................... 13

*Caiola v. Citibank, N.A., New York*,
    295 F.3d 312 (2d Cir. 2002)........................................................................................... 10

*City of Omaha Police & Fire Ret. Sys. v. Evoqua Water Techs. Corp.*,
    450 F. Supp. 3d 379 (S.D.N.Y. 2020)............................................................................ 5

*City of Warren Police & Fire Ret. Sys. v. World Wrestling Entertainment Inc.*,
    477 F. Supp. 3d 123 (S.D.N.Y. 2020)...................................................................... 24, 25

*DeMaria v. Andersen*,
    318 F.3d 170 (2d Cir. 2003)........................................................................................... 10

*Dobina v. Weatherford Int'l Ltd.*,
    909 F. Supp. 2d 228 (S.D.N.Y. 2012)............................................................................ 24

*ECA, Local 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.*,
    553 F.3d 187 (2d Cir. 2009)........................................................................................... 17

*Employees' Ret. Sys. of Gov't of the Virgin Islands v. Blanford*,
    794 F.3d 297 (2d Cir. 2015)........................................................................................... 23

*Freudenberg v. E\*Trade Fin. Corp.*,
    712 F. Supp. 2d 171 (S.D.N.Y. 2010)............................................................................ 13

*Ganino v. Citizens Utils. Co.*,
    228 F.3d 154 (2d Cir.2000)............................................................................................ 13

*Garber v. Legg Mason, Inc.*,
    537 F. Supp. 2d 597 (S.D.N.Y. 2008)............................................................................ 4

*In re Am. Int'l Grp., Inc. 2008 Sec. Litig.*,
    741 F. Supp. 2d 511 (S.D.N.Y. 2010)............................................................................ 18

*In re Aphira, Inc. Sec. Litig.*,
    2020 WL 5819548 (S.D.N.Y. Sept. 30, 2020)............................................................... 25

*In re Bank of Am. Sec. Corp. Derivatives & ERISA Litig.*,
    757 F. Supp. 2d 260 (S.D.N.Y. 2010)............................................................................ 7

*In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*,
    763 F. Supp. 2d 423 (S.D.N.Y. 2011)............................................................................ 12

*In re Bioscrip, Inc. Sec. Litig.*,
  95 F. Supp. 3d 711 (S.D.N.Y. 2015)..................................................................15

*In re Bioscrip, Inc. Sec. Litig.*,
  2015 WL 3540736 (S.D.N.Y. June 5, 2015) ............................................... 10

*In re Britannia Bulk Holdings Inc. Sec. Litig.*,
  665 F. Supp. 2d 404 (S.D.N.Y. 2009).................................................... 13

*In re Chicago Bridge & Iron Co. N.V. Sec. Litig.*,
  2018 WL 2382600 (S.D.N.Y. May 24, 2018) .................................... 16, 17

*In re Coty Inc. Sec. Litig.*,
  2016 WL 1271065 (S.D.N.Y. Mar. 29, 2019) ....................................... 18

*In re Facebook Inc. IPO Sec. & Derivative Litig.*,
  986 F. Supp. 2d 487 (S.D.N.Y. 2013).................................................. 21

*In re General Elec. Co. Sec. Litig.*,
  856 F. Supp. 2d 645 (S.D.N.Y. 2012)................................................. 25

*In re Jumei Int'l Holding Ltd. Sec. Litig.*,
  2017 WL 95176 (S.D.N.Y. Jan. 10, 2017) .............................................. 1

*In re Longwei Petroleum Inv. Holding Ltd. Sec. Litig.*,
  2014 WL 285103 (S.D.N.Y. Jan. 27, 2014) ......................................... 24

*In re Morgan Stanley Info. Fund Sec. Litig.*,
  592 F.3d 347 (2d Cir. 2010)................................................................ 10

*In re Nielsen Holdings PLC Sec. Litig.*,
  510 F. Supp. 3d 217 (S.D.N.Y. 2021)................................................. 26

*In re NIO, Inc. Sec. Litig.*,
  2021 WL 3566300 (E.D.N.Y. Aug. 12, 2021)....................................... 5

*In re Pareteum Sec. Litig.*,
  2021 WL 3540779 (S.D.N.Y. Aug. 11, 2021)...................................... 26

*In re ProShares Trust Sec. Litig.*,
  728 F.3d 96 (2d Cir. 2013).................................................................. 19

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
  930 F. Supp. 68 (S.D.N.Y. 1996)................................................... 18, 21

*In re Refco, Inc. Sec. Litig.*,
  503 F. Supp. 2d 611 (S.D.N.Y. 2007)................................................... 4

*In re Romeo Power Inc. Sec. Litig.*,
2022 WL 1806303 (S.D.N.Y. June 2, 2022) ...................................................... 23, 26

*In re Salix Pharm., Ltd.*,
2016 WL 1629341 (S.D.N.Y. Apr. 22, 20164).................................................... 22, 26

*In re SLM Corp. Sec. Litig.*,
740 F. Supp. 2d 542 (S.D.N.Y. 2010).................................................................... 17

*In re Synchrony Fin. Sec. Litig.*,
988 F.3d 157 (2d Cir. 2021)............................................................................. 12, 16

*In re Top Tankers, Inc. Sec. Litig.*,
528 F. Supp. 2d 408 (S.D.N.Y. 2007).................................................................... 20

*In re Vale S.A. Sec. Litig.*,
2017 WL 1102666 (S.D.N.Y. Mar. 23, 2017) ..................................................... 25, 26

*Jakubiak v. Quantumscape Corp.*,
2021 WL 5331722 (S.D.N.Y. Nov 16, 2021)........................................................ 24

*Katz v. Image Innovations Holdings, Inc.*,
542 F. Supp. 2d 269 (S.D.N.Y. 2008).................................................................... 26

*Lea v. TAL Educ. Grp.*,
837 Fed. App'x 20 (2d Cir. 2020).......................................................................... 27

*Lewy v. SkyPeople Fruit Juice, Inc.*,
2012 WL 3957916 (S.D.N.Y. Sept. 10, 2012)......................................................... 4

*Litwin v. Blackstone Grp., L.P.*,
634 F.3d 706 (2nd Cir. 2011)................................................................................ 13

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
797 F.3d 160 (2d Cir. 2015)................................................................................... 27

*Lowinger v. Pzena Inv. Mgmt., Inc.*,
341 F. App'x 717 (2d Cir. 2009) .......................................................................... 21

*Makor Issues & Rts., Ltd. v. Tellabs Inc.*,
513 F.3d 702 (7th Cir. 2008) ................................................................................ 23

*Milman v. Box Hill Sys. Corp.*,
72 F. Supp. 2d 220 (S.D.N.Y. 1999)........................................................................ 7

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
575 U.S. 175 (2015).......................................................................................... 15, 16

*P. Stolz Family P'ship L.P. v. Daum*,
    355 F.3d 92 (2d Cir. 2004)...................................................................................... 18

*Panther Partners Inc. v. Jianpu Tech. Inc.*,
    2020 WL 5757628 (S.D.N.Y. Sept. 27, 2020)........................................................ 20

*Ret. Sys. Grp. Tr. v. Eaton Corp. PLC*,
    791 F. App'x 230 (2d Cir. 2019) .............................................................................. 6

*Richman v. Goldman Sachs Grp, Inc.*,
    868 F. Supp. 2d 261 (S.D.N.Y. 2012).............................................................. 10, 11

*Rudman v. CHC Grp. Ltd.*,
    217 F. Supp. 3d 718 (S.D.N.Y. 2016)..................................................................... 17

*Set Cap. LLC v. Credit Suisse Grp., AG*,
    996 F. 3d 64 (2d Cir. 2021).................................................................................... 23

*Teamsters Local 445 Freight Div. Pension Fund v. Dynex Cap. Inc.*,
    531 F.3d 190 (2d Cir. 2008).................................................................................... 27

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
    551 U.S. 308 (2007)................................................................................................ 23

*Tongue v. Sanofi*,
    *816 F.3*d 199 (2d Cir. 2016) .................................................................................. 15

*Vanderhoef v. China Auto Logistics, Inc.*,
    2021 WL 3260849 (D.N.J. July 30, 2021)............................................................. 28

*Willard v. UP Fintech Holding Ltd.*,
    527 F. Supp. 3d 609 (S.D.N.Y. 2021)..................................................................... 20

*Wilson v. Merrill Lynch*,
    671 F.3d 120 (2nd Cir. 2011).................................................................................. 18

*Xu v. Gridsum Holding, Inc.*,
    2020 WL 1508748 (S.D.N.Y. Mar. 30, 2020) .......................................................... 4

*Yannes v. SCWorx Corp.*,
    2021 WL 2555437 (S.D.N.Y. June 21, 2021) ....................................... 21, 24, 26, 28

Statutes

15 U.S.C. § 77k(a)(1)................................................................................................. 22
15 U.S.C. § 77o.......................................................................................................... 22

<u>Rules</u>

Fed. R. Civ. P. 8 ........................................................................................................... 13

Court-appointed Lead Plaintiff Guozhang Wang ("Plaintiff") respectfully submits his Memorandum of Law in Opposition to the Motions to Dismiss the Amended Class Action Complaint ("Complaint")[1] by Cloopen Group Holding Limited ("Cloopen"), Cogency Global Inc. and Colleen De Vries (collectively "Cogency Defendants")[2] and Citigroup Global Markets Inc. Futu Inc., Goldman Sachs (ASIA) L.L.C., and Tiger Brokers (NZ) Limited ("Underwriter Defendants").[3]

## I.   SUMMARY OF ARGUMENT

The Motions to Dismiss filed by all Defendants—Cloopen, the Cogency Defendants, and the Underwriter Defendants,—should be denied entirely. Defendants advanced similar arguments in their motion to dismiss the complaint in a state-court action alleging overlapping claims under the 1933 Securities Act challenging the Cloopen Registration Statement. *See Sonny St John v. Cloopen Group Holding Limited*, Index No. 652617/20219, NYSCEF Doc. No 23 (New York Cty.

---

[1] Citations to "¶" are to the Complaint, ECF 84. Other capitalized terms have the meaning given in the Complaint. Internal citations are omitted, and emphasis is added in cites and quotes unless otherwise noted.

[2] Citations to "Cogency MTD" are to the Cogency Defendants' Joinder, ECF 96.

[3] Citations to "Underwriter Defendants' Joinder" are to Underwriter Defendants' Notice of Joinder, ECF 95. All remining Defendants ("Unserved Defendants") are being served in China and Hong Kong pursuant to the Hague Convention. Contrary to Defendants' argument, ECF 93 at 14 n.5, claims against the Unserved Defendants should not be dismissed. *See In re Jumei Int'l Holding Ltd. Sec. Litig.*, 2017 WL 95176, at *1 n.1, *6 (S.D.N.Y. Jan. 10, 2017) (all of plaintiffs' claims were dismissed for reasons other than lack of service). !

1

Sup. Ct.) ("*State Action*"). Defendants' motion was denied entirely in the State Action and should be denied here as well. *See* Declaration of Barbara Podell, Ex. 1.

*First*, Cloopen conceded that it had a duty to disclose post Q3 2020 financial matters in the Registration Statement once it reported a "Subsequent Event" disclosing the issuance and full exercise of the Series F Warrant ("Warrant") on January 7, 2021, along with selective accompanying facts. However, the "Subsequent Event" disclosure was incomplete and materially misleading in violation of accounting authority ASC 55 and Cloopen's legal duty to speak accurately and completely because it omitted the fair value of the Warrant when it was recorded in November 2020 − pre IPO, which was essential for investors to calculate the then existing material loss that Cloopen recorded in the fourth quarter of 2020 ("Q4 2020"), which concluded more than one month prior to the IPO. By concealing this essential piece of the puzzle, Defendants prevented investors from calculating the massive then existing loss resulting from the change in fair value of the Warrant from the November 13, 2020 issuance date to December 31, 2020.

*Second*, the Registration Statement failed to disclose the then existing fact of the approximate 30% material drop in Cloopen's "Key Operating Metric," (ECF 94-1 at 12) of the dollar-based net customer retention rate, to 63.1% for Q4 2020 (pre-IPO), thus rendering statements in the Registration Statement about customer retention and expansion so incomplete as to mislead. Cloopen's statements of belief and opinion about customer retention and expansion are actionable because the omitted fact existed at the time of the Registration Statement. Similarly, Cloopen's forward looking statements are actionable because they omitted an existing fact, and its cautionary statements were ineffective to warn of an event that had already occurred.

*Third*, the Registration Statement failed to disclose the then existing massive Q4 2020 increase in accounts receivables and allowance for doubtful accounts, thus rendering the risk

2

disclosures in the Registration Statement materially misleading and inadequate because the risks warned of as hypothetical had already occurred.

## II.    FACTUAL ALLEGATIONS

In its February 2021 U.S. IPO, Cloopen sold 23 million American Depositary Shares ("ADSs") pursuant to the Registration Statement effective on February 8, 2021 at $16 per ADS. ¶ 3. On March 26, 2021, Cloopen shocked the market when it published its financial results for Q4 2020 and full year 2020, ending on December 31, 2020, reporting Q4 2020 net losses of $46.8 million (a staggering loss increase of 466.9% year-over-year), and operating expenses of $27.6 million (an increase of 30% over Q4 2019). Cloopen blamed its surge in net loss on a "change in fair value of warrant liabilities of . . . US$34.4 million" and attributed the remarkable (59.2%) increase in general and administrative expenses to "an increase in the provision for doubtful accounts resulting from increases in accounts receivables." ¶ 13.

In response to Cloopen's earnings announcement, the price of Cloopen's ADSs fell 18.5% in a single day from $14.42 on March 25, 2021, to close at $11.75 on March 26, 2021. ¶ 14. Despite these disclosures, the Individual Defendants continued to mislead investors and concealed the true extent of Cloopen's troubles. On May 10, 2021, Cloopen belatedly revealed that its dollar-based net customer retention rate dropped by year-end 2020 – far below historical periods – to 86.8%. The price of Cloopen's ADSs fell again, closing at $8.97 on May 12, 2021, 9.3% below the previous day's close. ¶ 16. On the date the initial complaint was filed (December 10, 2021), Cloopen's ADSs traded at $3.10 per ADS, approximately 80% below the $16 IPO offering price. ¶ 17.

### III.    ARGUMENT

#### A.    Rule 9(b) Is Inapplicable to Plaintiff's Section 11 Claims and, Even If It Were, Plaintiff Easily Satisfies That Standard

Defendants are wrong that Plaintiff's Section 11 claims are subject to Rule 9(b)'s pleading standard and sound in fraud. ECF 93 at 16. Where, as here, a complaint "'draw[s] a clear distinction between the negligence and fraud claims'" – *i.e.*, the Section 11 and the Section 10(b) claims – the former are subject only to Rule 8's notice pleading requirements. *See Lewy v. SkyPeople Fruit Juice, Inc.*, 2012 WL 3957916, at *9 (S.D.N.Y. Sept. 10, 2012) (quoting *In re Refco, Inc. Sec. Litig.*, 503 F. Supp. 2d 611, 631-32 (S.D.N.Y. 2007)); *see also Xu v. Gridsum Holding, Inc.*, 2020 WL 1508748, at *7 (S.D.N.Y. Mar. 30, 2020).

Not only do Defendants fail to identify any specific allegations underlying Plaintiff's Section 11 claims that expressly speak of fraud, *see* ECF 93 at 16, but those claims specifically disclaim "any allegations construed as alleging fraud." ¶ 140. Even more critically, the Complaint's scienter and fraud-on-the-market allegations are introduced *only after* the Securities Act claims have been fully pled and are separately housed in the portion of the Complaint asserting violations of Section 10(b). *See SkyPeople Fruit Juice*, 2012 WL 3957916, at *9 (holding plaintiffs' Section 11 claims not subject to Rule 9(b) where "the scienter allegations, quite deliberately, are not introduced until after the Securities Act claims are fully pled and are not incorporated by reference into the Securities Act claims") (citing *In re Refco*, 503 F. Supp. 2d at 631-32 and *Garber v. Legg Mason, Inc.*, 537 F. Supp. 2d 597, 612 (S.D.N.Y. 2008)).

Accordingly, Plaintiff's Section 11 claims are not subject to Rule 9(b), and the cases Defendants cite – which *do not* involve complaints that wholly-segregated their scienter

4

allegations from their Section 11 claims as here[4] – do not counsel otherwise. However, even if Rule 9(b) applied to Plaintiff's Section 11 claims, the Complaint easily satisfies that standard for the reasons set forth in Point III.B.1, infra.

### B.    Plaintiff Alleges Actionable Statements in the Registration Statement

#### 1.    Plaintiff's Allegations Are Pled with Specificity

Cloopen's contradictory characterizations about the specificity of pleadings in this case and  the State Action highlight the disingenuousness and lack of merit of their assertions. In this case, Cloopen complains about lack of specificity of the Complaint's quotes of false and misleading statements within the context of the paragraph(s) in which they appear by asserting that "lengthy block quotes with language bolded and italicized" are insufficient. ECF 93 at 17. However, Cloopen made the opposite argument in its motion to dismiss the Amended Complaint in the State Action, NYSCEF Doc. No. 25 at 14, where it challenged that complaint's "snippets

---

[4] The sole exception is *City of Omaha Police & Fire Ret. Sys. v. Evoqua Water Techs. Corp.*, 450 F. Supp. 3d 379 (S.D.N.Y. 2020) (holding that "so long as the theories of liability are the same" for plaintiff's Section 11 and Section 10(b), Rule 9(b) applies even if the complaint segregate the allegations supporting those two categories of claims). *See* ECF 93 at 16-17 n.6. But that decision – which would render it impossible to plead negligence-based Section 11 claims where plaintiffs also plead that the misconduct violates Section 10(b) – is contrary to the weight of authority cited above. *See also In re NIO, Inc. Sec. Litig.*, 2021 WL 3566300, at *5 (E.D.N.Y. Aug. 12, 2021) (holding Rule 8 applied where "[p]laintiffs' claims under Section 11 of the Securities Act and under Section 10(b) of the Exchange Act are analytically distinct, *even if overlapping conduct forms the basis for both*"). In any event, *City of Omaha* ultimately concluded that the plaintiffs' Section 11 claims satisfied Rule 9(b).

quoted out of context" and argued that "Plaintiff distorted the statements at issue by plucking selective phrases from longer statements."

Here, Plaintiff's allegations of materially false and misleading statements and omissions are pled within the context of the surrounding language necessary to avoid the "cherry picking" and out of context "snippets" which Cloopen criticized in the State Court Action. Plaintiff's allegations comply with the Second Circuit's directive which requires "[c]onsidering [the statement] in full—rather than considering the edited version." *S.C Ret. Sys. Grp. Tr. v. Eaton Corp. PLC*, 791 F. App'x 230, 234 (2d Cir. 2019). Reviewed in context, each alleged false and misleading statement is followed by a paragraph explaining which part of the quote is alleged to be false and why. Although not applicable here, as discussed above, Plaintiff has satisfied the "who, what, when and why" of Rule 9(b). *See* Series F Warrant allegations, ¶¶ 74, 77-79, 81; customer retention allegations, ¶¶ 85, 87-90, 103, 104; customer non-payment, ¶¶ 105-107; and risk warnings, ¶¶ 91-102.[5] The cases cited by Cloopen are factually distinguishable because the complaints in those cases, unlike here, contained unwieldy block quotes without sufficient guidance as to the challenged statements. *See* ECF 93 at 17.

---

[5] Should the Court find any deficiencies in the Complaint, Plaintiff respectfully requests leave to file a Second Amended Complaint pursuant to Rule 15(a)(2) ("The court should freely give leave when justice so requires.")

2.    **Plaintiff Has Alleged Actionable Omissions About the Series F Warrant**

a.    **Cloopen's Discussion of the Series F Warrant in the "Subsequent Events" Section of the Financial Statements Included in the Registration Statement Created a Duty to Disclose Material Facts About the Issuance of the Series F Warrant**

Cloopen argues that it had "no duty to disclose the fair value because the Series F Warrant was issued in Q4 2020, the quarter *after* the Q3 2020 period to which the Registration Statement was expressly limited." ECF 93 at 19 (emphasis in original). *Cloopen's argument ignores the fact that the Registration Statement actually disclosed certain material details about the November 2020 issuance and full exercise of the Series F Warrant on January 7, 2021 (Q1 2021)—after Q3 2020—in the "Subsequent Events" section of the Registration Statement, including the exercise price of $34 million on January 7, 2021.* ¶ 78. *See In re Bank of Am. Sec. Corp. Derivatives & ERISA Litig.*, 757 F. Supp. 2d 260, 304 (S.D.N.Y. 2010) ("intra-quarter updates may be required [ ] if intervening events trigger a duty to disclose."); *see also Milman v. Box Hill Sys. Corp.*, 72 F. Supp. 2d 220, 231 (S.D.N.Y. 1999) ("sales results for a quarter in progress" should be disclosed when defendants had knowledge prior to the IPO of a trend that already had a material negative impact on net sales).

ASC (Accounting Standards Codification) 855, which is the GAAP section governing subsequent events, dictates the specific disclosure requirements of subsequent events. The Glossary in ASC 855-10-20, https://checkpoint.riag.com/app/view/printProgressPreview?usid=1e2f defines subsequent events as:

> ***"Events or transactions that occur after the balance sheet date but before financial statements are issued or are available to be issued.*** There are two types of subsequent events:
>
> a.    The first type consists of events or transactions that provide additional evidence about conditions that existed at the date of the balance sheet, including the

estimates inherent in the process of preparing financial statements (that is, recognized subsequent events).

b. ***The second type consists of events that provide evidence about conditions that did not exist at the date of the balance sheet but arose subsequent to that date (that is, nonrecognized subsequent events)."***

For the purposes of the financial statements included in the Registration Statement, the issuance and January 7, 2021 exercise of the Series F Warrant was a "nonrecognized subsequent event," within the meaning of ASC 855 because it was an event which "provide[s] evidence about conditions that did not exist at the date of the balance sheet but arose subsequent to that date." Generally, ASC 855 provides two criteria, both of which are required for disclosure of a subsequent event (https://viewpoint.pwc.com/dt/us/en/pwc/accounting_guides/financial_ statement_/financial_statement___18_US/chapter_28_subsequen_US/286_nonrecognized_su_U S.html):

a. ***The event should have a determinable significant effect on the balance sheet at the time of occurrence or on the future operations of the reporting entity.***

b. ***Without disclosure of it, the financial statements would be misleading.***

Cloopen's inclusion of the November 2020 issuance and January 7, 2021 full exercise of the Series F Warrant as a "Subsequent Event" in the Registration Statement was an acknowledgement that the issuance and exercise *should have a determinable significant effect on the balance sheet at the time of occurrence or on the future operations of the reporting entity* and w*ithout disclosure of it, the financial statements would be misleading,* pursuant to ACS 855. Upon disclosing the "Subsequent Event," Cloopen had a duty to be accurate and complete in order not to mislead the readers of the financial statements. Its failure to disclose the existing fact of the Warrant's fair value at issuance in November 2020—more than two months prior to the IPO— omitted information which would have allowed investors to understand that the exercise of the

Warrant resulted in a then existing material loss as of December 30, 2020. Therefore, the "Subsequent Event" disclosure was incomplete and materially misleading on its face.

Cloopen's authorities, ECF 93 at 18-19, for the proposition that it had no duty to disclose the fair value are distinguishable because, in those cases, there was no prescribed duty, as exists here with respect to ASC 855, nor were there any actual disclosures by the issuers, as Cloopen made here, amounting to an admission that the event *should have a determinable significant effect on the balance sheet and* w*ithout disclosure of it, the financial statements would be misleading*.

> **b.    Cloopen's Selective Disclosure of Facts about the Exercise of the Series F Warrant Violated Its Disclosure Duty and ASC 855 by Failing to Disclose An Estimate of Its Financial Effect**

When an event is disclosed as a "Subsequent Event," ASC 855-10-50-2 mandates that the issuer "*shall*" disclose "[a]n estimate of its financial effect, or a statement that such an estimate cannot be made:"

> **50-2 *Some nonrecognized subsequent events may be of such a nature that they must be disclosed to keep the financial statements from being misleading. For such events, an entity shall disclose the following:***
>
> a.   The nature of the event
>
> b.   ***An estimate of its financial effect, or a statement that such an estimate cannot be made.***

In the Registration Statement, Cloopen disclosed that the Series F Warrant was issued on November 13, 2020 and fully exercised on January 7, 2021, but did not disclose, as required by ASC 855-10-50-2, an estimate of the financial effect of these events, which was a then existing and significant $26 million loss for Q4 2020, which was easily calculable at the time the "Subsequent Event" was included in the Registration Statement. ¶ 79.

9

### c.    Cloopen's Selective Disclosure of Facts about the Series F Warrant Was So Incomplete as to Mislead

In addition to failing to comply with ASC 855, Cloopen's omission of the fair value of the Warrant at issuance violated its legal duty to speak accurately and completely. Cloopen asserts that its affirmative disclosures do not trigger a broad duty to disclose every detail relating to that warrant. ECF 93 at 20. This argument lacks merit because "when an offering participant makes a disclosure about a particular topic, whether voluntary or required, the representation must be 'complete and accurate.'" *In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 366 (2d Cir. 2010); *Caiola v. Citibank, N.A., New York*, 295 F.3d 312, 331 (2d Cir. 2002); *DeMaria v. Andersen*, 318 F.3d 170, 180 (2d Cir. 2003) ("in evaluating whether defendants were under a duty to disclose interim financial information in the prospectus, we must determine whether the March 1999 information was material in light of the financial information already disclosed to investors."); *Richman v. Goldman Sachs Grp, Inc*., 868 F. Supp. 2d 261, 274 (S.D.N.Y. 2012) ("[R]evealing one fact about a subject does not trigger a duty to reveal all facts on the subject, *so long as what was revealed would not be so incomplete as to mislead*."); *In re Bioscrip, Inc. Sec. Litig.*, 2015 WL 3540736 at *6 (S.D.N.Y. June 5, 2015) ("even if BioScrip initially had no affirmative obligation to disclose these adverse intra-quarterly developments, Plaintiffs plausibly allege that they became obliged to do so after making affirmative statements in the Preliminary Prospectus Supplement that would otherwise be misleading without disclosure.").

Cloopen also argues that "the Registration Statement disclosed that warrant liabilities had been increasing for a year leading up to the IPO, cutting against any obligation to further disclose," ECF 93 at 20. Cloopen ignores the fact its selective disclosures, ¶¶ 78-81, omitted the existing fact (fair value of the Warrant at issuance in November 2020), necessary to calculate the existing loss at December 30, 2020, thus making its disclosures "so incomplete as to mislead." *Richman*, 868

F. Supp. 2d at 274. Cloopen states that it "is not aware of any case holding that companies must disclose warrant liabilities for **unreleased periods** when they report, as did Cloopen, that changes in estimated fair value would be made each reporting period and reflected in the company's financial statements." ECF 93 at 20. Perhaps, however, Cloopen ignores that it did, in fact, report the issuance and exercise of the Warrant as in a "Subsequent Event," and that ASC 855-10-50 requires it to state "*[a]n estimate of its financial effect*." *See* ASC 855.

Cloopen also mischaracterizes Plaintiff's allegations in its argument that "Plaintiff does not plead that Cloopen was able to disclose Q4 2020 results at the time of the IPO since they had not yet been reported." ECF 93 at 18. In fact, Plaintiff alleges that the fair value at issuance of the Series F Warrant—the omitted material fact—existed and was recorded by Cloopen as of the November 2020 issuance. ¶ 74. It is clear on the face of the Complaint that Cloopen was able to disclose the fair value at issuance and the loss suffered as of December 30, 2020 in the Registration Statement, along with the other disclosed facts about the Warrant's issuance and exercise in the "Subsequent Event." ¶¶ 79- 81. Finally, Cloopen's cited authority lends no support because the defendants in those cases had not already disclosed specific information about the topic at issue, as Cloopen did here by disclosing the November 13, 2020 issuance and January 7, 2021 full exercise of the Series F Warrant in the Registration Statement, thus conceding its materiality because it had a "*determinable significant effect on the balance sheet*" pursuant to ASC 855. *See* ECF 93 at 18.

11

### 3.    Plaintiff Has Alleged Actionable Omissions About Customer Retention

#### a.    The Registration Statement Omitted the Material Existing Fact of a 30% Drop in Dollar-Based Net Customer Retention Rate in Q4 2020, Which Made Statements About Customer Retention and Expansion Materially Misleading

Plaintiff alleges that Cloopen failed to disclose the existing fact of the approximate 30% material drop in a metric which Cloopen itself calls a "Key Operating Metric"—the dollar-based net customer retention rate (ECF 94-1 at 12) to 63.1% for Q4 2020, thus rendering its statements in the Registration Statement about customer retention and expansion materially misleading and so incomplete as to mislead. Raising issues of materiality and a "reasonable investor" standard, which cannot be decided on a motion to dismiss, Cloopen argues that its disclosure of past results was sufficient, ECF 93 at 24, and that "*any reasonable investor . . . would have been well aware*" of that decline from pre-IPO disclosures." ECF 93 at 25.[6]

Even if statements of past results are literally true, "[t]he literal truth of an isolated statement is insufficient; the proper inquiry requires an examination of defendants' representations, taken together and in context." *In re Synchrony Fin. Sec. Litig.*, 988 F.3d 157, 171 (2d Cir. 2021); *In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*, 763 F. Supp. 2d 423, 495 (S.D.N.Y. 2011) (citations omitted) ("To be 'meaningful,' a 'cautionary statement must discredit the alleged misrepresentations to such an extent that the 'risk of real deception drops to nil.'"). An omission is material if there is "a substantial likelihood that the disclosure of the omitted

---

[6] Cloopen's cases are distinguishable because Plaintiff here does not seek disclosure of significant risks or gloomy, unflattering characterizations, but instead alleges that the then existing and specific "Key Operating Metric" of dollar-based net customer retention rate during Q4 2020 should have been disclosed in the Registration Statement. *See* ECF 93 at 21.

fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *Basic Inc. v. Levinson*, 485 U.S. 224, 231-32 (1988). The "reasonable investor" standard requires a fact-intensive inquiry. *In re Britannia Bulk Holdings Inc. Sec. Litig.*, 665 F. Supp. 2d 404, 413 (S.D.N.Y. 2009). "Materiality is an 'inherently fact-specific finding.'" *Litwin v. Blackstone Grp., L.P.*, 634 F.3d 706, 716–17 (2nd Cir. 2011). *See Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 162 (2d Cir.2000).

"[W]hen a district court is presented with a Rule 12(b)(6) motion, a complaint may not properly be dismissed ... on the ground that the alleged misstatements or omissions are not material unless they are so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their importance." *Litwin*, 634 F.3d at 717. "Where the principal issue is materiality, an inherently fact-specific finding, the burden on plaintiffs to state a claim is even lower" than the "relatively minimal burden" applicable to other elements of their claims under Rule 8 of the Federal Rules of Civil Procedure. *Id.* at 718; *see also Freudenberg v. E*Trade Fin. Corp.*, 712 F. Supp. 2d 171, 181 (S.D.N.Y. 2010) ("[T]he trier of fact usually decides the issue of materiality.").

Contrary to Cloopen's unsupported and implausible supposition that reasonable investors would not have considered the dramatic 30% Q4 2020 drop significant, it is more plausible, based on Cloopen's own representations in the Registration Statement, that investors would have reasonably expected an improvement in dollar-based net customer retention rate in Q4 2020 and were in fact shocked by the annual rate of 86.8% announced belatedly on May 10, 2021, amounting to a 30% decline to a rate of 63.1% during Q4 2020, ¶¶ 13, 16, 55 and n.2. For example, a reasonable investor would not have expected such a precipitous Q4 2020 drop because the Registration Statement informed investors about the seasonality of results and specifically that

13

higher revenues were experienced during the second half of the year. ¶ 101 ("*Our customers, especially large enterprises, tend to enter into contracts with us in the second half of each year in accordance with their budget cycles. As such, we generally record higher revenues during such periods*."). The Registration Statement also represented that "[w]e believe that we have strong customer acquisition capability while maintaining a steady revenue stream from repeat customers," ECF 94-1 at 78 and ¶¶ 83, 103. Reasonable minds could not differ that a 30% drop in Q4 2020 is inconsistent with Cloopen's belief and the stated seasonality of results.

Moreover, the dollar-based net customer retention rates of 135.7%, 102.7% and 94.7% in 2018, 2019 and the first nine months of 2020, respectively, disclosed in the Registration Statement show *decreasing* percentage declines in each period. Because citations of the historical rates were prefaced by the statement "[w]w have experienced robust growth in recent years," ECF 94-1 at 7, 74, 83, a reasonable investor could have expected, if not an increase, at least a continuation of the decreasing percentage decline, based on Cloopen's repeated touting of its belief in its "land and expand" strategy and potential, as Cloopen admits. ECF 93 at 22. *See also* ECF 94-1 at 76, 78, 87, 92. Indeed, viewing the Registration Statement as a whole and its statements in context, it is rife with optimistic statements about Cloopen's diverse and loyal customer base and its ability to retain and expand the base, leading a reasonable investor to plausibly believe that Q4 2020 could then be experiencing either an improvement or a decreasing percentage decline, rather than a material 30% drop in the "Key Operating Metric" of dollar-based net customer retention rate. *See* ¶¶ 84, 86, 88-90, 98-100, 102.[7]

---

[7] Cloopen argues that "the Registration Statement discloses that project-based revenues from Cloopen's cloud-based CC solutions increased by 89.1% for the nine-month period ended

The cases cited by Cloopen are inapposite because those cases involved warnings about hypothetical risks, changing market conditions and past problems, but did not involve the omission of a specific, regularly calculated, then existing material fact of a "Key Operating Metric," as in this case. *See* ECF 93 at 25.

>    **b.    Cloopen's Statements of Belief Which Omit the Existing Fact of a 30% Drop in the Dollar-Based Net Customer Retention Rate in Q4 2020 Make Those Beliefs Misleading**

Plaintiff alleges that Cloopen's omission of the then existing 30% drop in the dollar-based net customer retention rate in Q4 2020—its "Key Operating Metric"—makes its positive statements of belief and opinion about customer retention and expansion misleading to a reasonable investor, taken in the context of the statements throughout the Registration Statement. *See e.g.*, ¶¶ 83, 86, 88, 89, 97, 99, 100, 102. Statements of opinion may be misleading and actionable because "*if the real facts are otherwise, but not provided, the opinion statement will mislead its audience.*" *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 188 (2015). A reasonable investor "expects not just that the [speaker] believes the opinion (however irrationally), but that *it fairly aligns with the information in the [speaker's] possession at the time.*" *Id.* at 188-89. *See Tongue v. Sanofi*, 816 F.3d 199, 212 (2d Cir. 2016); *In re Bioscrip Inc. Sec. Litig.*, 95 F. Supp. 3d 711, 731 (S.D.N.Y. 2015).

Cloopen did not provide investors with the "real facts" it possessed when the Registration Statement was issued. The Registration Statement represents Cloopen's dollar-based net customer

September 30, 2020 as compared to the same period in 2019, contradicting Plaintiff's allegations." ECF 93 at 24. This argument compares apples with oranges. The "Key Operating Metric" of dollar-based net customer retention rate measures revenue from existing customers for solutions on a recurring basis, not project-based revenues. *See* ECF 94-1 at 79 and ¶ 54.

15

retention rate as an operating metric that "illustrates our ability to increase revenue generated from our existing customer base." ¶ 54. *See also* ECF 94-1 at 75. Prefaced by the statement, "[w]e have experienced robust growth in recent years," the Registration Statement repeatedly and consistently cites the Key Operating Metric" in the context of optimistic statements of opinion or belief. ECF 94-1 at 7, 74, 83 and ¶¶ 90, 98. *See also* ECF 94-1 at 75-76 and ¶ 83; ECF 94-1 at ¶¶ 87-88; ECF 94-1 at 92 and ¶ 86. Because Cloopen's statements of belief and opinion conflict rather than align with "the information in the [speaker's] possession at the time." *Omnicare*, 575 U.S. at 188-89, and "conflict with what a reasonable investor would take from the statement itself." *Sanofi*, 816 F.3d at 210, its statements of belief and opinion are materially misleading.

### c.    Cloopen's Specific Factual Statements About Customer Retention Are Not Puffery

Cloopen improperly characterizes its specific statements about its existing customers and actions taken to retain them and expand sales to them as non-actionable puffery, corporate optimism and vague statements about a company's prospects. ECF 93 at 27, citing ¶¶ 82-83, 89, 100, 106. They are not. Cloopen's specific factual statements relate directly to existing customer retention and expansion, which is so important to Cloopen and specific that it is a "Key Operating Metric" measured by the dollar-based net customer retention rate. Statements are not puffery when they are "anchored in misrepresentations of existing facts." *In re Chicago Bridge & Iron Co. N.V. Sec. Litig.*, 2018 WL 2382600, at *8 (S.D.N.Y. May 24, 2018) ("There is a difference between enthusiastic statements amounting to general puffery and opinion-based statements that are anchored in misrepresentations of existing facts."); *see also In re Synchrony*, 988 F.3d at 161 (the specific, factual nature of the pushback statement, plausibly alleged that "Synchrony misrepresented facts pertaining to events that had already transpired" and were not puffery). Cloopen's specific statements about customer retention and expansion measured by a "Key

16

Operating Metric" are not "merely generalizations regarding . . . business practices," *ECA, Local 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 206 (2d Cir. 2009), "simply too generic to express any objective fact." *Synchrony*, 988 F.3d at 173, or relate to a vague "strong" relationship[] with its customers, *Rudman v. CHC Grp. Ltd.*, 217 F. Supp. 3d 718, 728 (S.D.N.Y. 2016).

### d.     Cloopen's Statements Are Not Non-Actionable Forward-Looking Statements

Contrary to Cloopen' s argument, ECF 93 at 28, its statements prefaced by "we expect," "we intend" and "we plan" and including the word "potential" describe Cloopen's then existing specific business practices for retaining customers and expanding sales to them, as measured by the dollar-based net customer retention rate "Key Operating Metric." *See* ¶¶ 84, 86-87, 89, 99-100, 102, 103. They are not forward- looking statements about potential business practices; rather, they are statements of existing business practices measured by a key metric, prefaced by Cloopen's unjustified optimism about their potential and future success. Above all, those statements are misleading in view of the then existing 30% drop in Q4 2020 dollar-based net customer retention rate. "[I]t is well recognized that even when an allegedly false statement has both a forward-looking aspect and an aspect that encompasses a representation of present fact, the safe harbor provision of the PSLRA does not apply." *In re SLM Corp. Sec. Litig.*, 740 F. Supp. 2d 542, 556 (S.D.N.Y. 2010). *See In re Chicago Bridge & Iron Co. N.V. Sec. Litig.*, 2018 WL 2382600 at *8 ("the Progress Statements included both forward looking aspects—that CBI does not believe that its pending contractual claims and disputes will have a materially adverse effect on its future results

17

of operations—and alleged misrepresentation of present fact—that the Nuclear Projects were achieving important milestones and that CBI passed the NRC investigations successfully.")

        e.        **Cloopen's "Risk" Warnings Were Misleading Because the Risk Had Already Occurred**

The "Risk Factors" section in Cloopen's Registration Statement is misleading because the risks warned of as hypothetical had already occurred. *See e.g.*, ¶¶ 92-97 (risk warnings couched in terms of "could" or "may be"). "To be 'meaningful,' a 'cautionary statement must discredit the alleged misrepresentations to such an extent that the '*risk of real deception drops to nil*.'" *Wilson v. Merrill Lynch*, 671 F.3d 120, 130 (2nd Cir. 2011). "A company's purported risk disclosures are misleading where the company warns only that a risk may impact its business when that risk has already materialized." *In re Coty Inc. Sec. Litig.*, 2016 WL 1271065, at *11 (S.D.N.Y. Mar. 29, 2019); *see In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 930 F. Supp. 68, 72 (S.D.N.Y. 1996) ("The doctrine of bespeaks caution provides no protection to someone who warns his hiking companion to walk slowly because there might be a ditch ahead when he knows with near certainty that the Grand Canyon lies one foot away."); *In re Am. Int'l Grp., Inc. 2008 Sec. Litig.*, 741 F. Supp. 2d 511, 531 (S.D.N.Y. 2010) ("[G]eneric risk disclosures are inadequate to shield defendants from liability for failing to disclose known specific risks."). *See also P. Stolz Family P'ship L.P. v. Daum*, 355 F.3d 92, 97 (2d Cir. 2004) ("It would be perverse indeed if an offeror could knowingly misrepresent historical facts but at the same time disclaim those misrepresented facts with cautionary language.") Cloopen relies on unavailing authorities. In those cases, the risks warned of had not yet materialized, unlike in this case, and the challenged statements were not specific,

unlike Cloopen's customer retention and expansion tracked by a "Key Operating Metric." *See* ECF 93 at 28.

### 4.    Cloopen's Statements About Customer Non-Payment Are False and Misleading Because They Omit the Then Existing Q4 2020 Material Customer Non-Payment

On March 26, 2021, Cloopen announced Q4 2020 earnings, shocking the market with a 466.9% increase in net losses year over year. ¶ 116. Cloopen's March 26, 2021 Form 6-K and press release blamed the Q4 2020 loss in part on an "*increase in the provision for doubtful accounts resulting from increased accounts receivables*" for the 59.2% increase recorded in general and administrative expenses." ¶¶ 116, 118. Cloopen's jaw-dropping belated disclosure created a substantial likelihood that disclosure of that fact would have been viewed by the reasonable investor as significantly altering the total mix of information made available in the IPO. *See In re ProShares Trust Sec. Litig.*, 728 F.3d 96, 102 (2d Cir. 2013).

The Registration Statement informed investors that Cloopen experiences the seasonality of results, thus producing higher revenues during the second half of the year, ¶ 101, which contradicts Cloopen's argument, ECF 93 at 29-30, that it adequately disclosed the risk of increasing accounts receivable and allowances for doubtful accounts in the Registration Statement. Plaintiff also alleges that Cloopen's risk disclosures about customer non-payment were inadequate because the risks warned of as hypothetical had already occurred. *See* ¶¶ 105, 107.

The Registration Statements emphasizes Cloopen's close and "continuous" monitoring of overdue balances, including that "*[w]e will closely monitor our outstanding accounts receivables and follow up with relevant customers on a continuous basis in order to collect overdue balances*" and "[w]e make a credit assessment of our customers before entering into an agreement with them, ¶ 105; "full service customer support and success system for large enterprises" and "ongoing 24/7/365 live chat and phone support" and "[w]e believe high customer satisfaction and close

19

customer relationship can keep us posted of their honest feedback," ¶ 86; and "[w]e also intend to optimize our incentive structure to encourage our sales and customer support teams to actively and regularly interact with existing customers," ¶ 90. These disclosures contradict Cloopen's argument that "[t]he Complaint also fails to identify any facts showing that Cloopen was aware at the time of the Registration Statement of any changes to its customers' business and financial conditions (or to Cloopen's own conditions) that would materially affect its customers' ability to pay." ECF 93 at 29. Finally, Cloopen's risk warnings and disclosures were not "robust," as Cloopen claims, ECF 93 at 29, but instead were vague and evaded disclosure of the then existing material non-payments. Cloopen's cases do not support its self-serving interpretation of its risk warnings. *See* ECF 93 at 29.

C.    **Plaintiff Alleged Violations of Item 303 and 105**

Defendants challenge Plaintiff's Item 303 claims on the ground that Item 303 is inapplicable to Registration Statements filed by foreign corporations on Form F-1. *See* ECF 93 at 30. But Defendants' hyper-technical parsing of the regulations ignores that foreign registrants are subject to identical disclosure requirements – via Item 5 of Form 20-F, which is incorporated into Form F-1 – and that courts in this district treat alleged violations of Item 303 and Item 5 as interchangeable. *See Willard v. UP Fintech Holding Ltd.*, 527 F. Supp. 3d 609, 619 n.5 (S.D.N.Y. 2021); *Panther Partners Inc. v. Jianpu Tech. Inc.*, 2020 WL 5757628, at *7 n.5 (S.D.N.Y. Sept. 27, 2020); *In re Top Tankers, Inc. Sec. Litig.* 528 F. Supp. 2d 408, 416 (S.D.N.Y. 2007).

Defendants next argue, incongruously, that Cloopen's "4Q 2020 metrics" did not constitute a "material trend," while at the same contending that "it sufficiently disclosed the supposedly 'omitted' trends of increasing warrant liabilities, decreasing net customer retention rates, and increasing allowances for doubtful accounts." ECF 93 at 30. Defendants are only half correct. Cloopen's Q4 2020 developments were not new trends, but material accelerations of prior trends,

20

the magnitude of which rendered the Registration Statement's incomplete disclosure devoid of any predictive value. *See Lowinger v. Pzena Inv. Mgmt., Inc.*, 341 F. App'x 717, 720 (2d Cir. 2009) (Item 303 requires disclosure of "an important change that . . . significantly or materially decreases the predictive value of [the] reported results, so as to prevent the prevent the latest reported results from misleading potential investors.").

Defendants' partial, incomplete disclosure of these trends – which omitted, for example, the facts that the exercise of the Series F Warrant contributed to a 466% year-over-year increase in net losses and that Cloopen's customer retention rate decreased precipitously from 94.7% in the first nine months of 2020 to 63.1% in 4Q 2020 – violated Item 303. *See generally In re Facebook Inc. IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 487, 510-512 (S.D.N.Y. 2013) (holding Item 303 required disclosure of intra-quarter trend's impact on revenue and observing that "the mere identification of a trend is, in some cases, not sufficient disclosure"); *cf. In re Prudential*, 930 F. Supp. at 72 (insufficient for "someone [to] warn[ ] his hiking companion to walk slowly because there might be a ditch ahead when he knows with near certainty that the Grand Canyon lies one foot away").

Finally, Defendants' argument regarding Item 105 – namely that they sufficiently disclosed the required information – fails for the same reasons stated above.

### D.    Plaintiff Properly Relied on Defendants' Post-IPO Admissions

Defendants next argue that "Plaintiff cannot rely on events post-dating the IPO to contend" the Registration Statement's disclosures were false or misleading. *See* ECF 93 at 31. Defendants are incorrect. This Court has held that *even post-class period* statements can establish the falsity of a defendants' prior statements. *See Yannes v. SCWorx Corp.*, 2021 WL 2555437, at *7 (S.D.N.Y. June 21, 2021). The key issue, as this Court held in rejecting fraud-by-hindsight arguments similar to those Defendants raise here, is whether Defendants' subsequent disclosures

indicate that they were in possession of contradictory facts *at the time of their challenged statements*. *See id.* ("Contrary to the defendants' contention, the plaintiff has not merely attempted to plead 'fraud-by-hindsight.' Rather, as discussed above, the plaintiff alleges that publicly accessible information indicating that [it's medical supplier] could not supply the required tests was available to the defendants prior to the [defendant company's] announcement of the Purchase Order on April 13, 2020."). Here, Defendants' post-IPO admissions make clear that the (i) the fair value at issuance of the Series F Warrant, (ii) the precipitous decline in Cloopen's Q4 2020 customer retention rate, and (iii) the massive increase in Cloopen's Q4 2020 accounts receivables, were facts in existence at least one month prior to the Registration Statement's issuance.[8]

### E.    The Cogency Defendants' Arguments Lack Merit

The Cogency Defendants' arguments merit little attention. *See ECF No. 96 at 1-2.* Section 11 provides for strict liability against "*every person* who signed" a materially misleading registration statement. *See 15 U.S.C. § 77k(a)(1)* (emphasis added). Because it is undisputed that Defendant DeVries signed the Registration Statement, she is liable under Section 11. The Cogency Defendants' argument is unsupported by a single authority. *See ECF 96 at 2-3.* Similarly, because Section 15 of the Securities Act "creates liability for individuals or entities that 'control[ ] any person liable' under section 11," *15 U.S.C. § 77o,* and because Cogency does not dispute that it

---

[8] *See also In re Salix Pharm*, 2016 WL 1629341, at *16 (S.D.N.Y. Apr. 22, 2016) ("Courts often reject an incantation of fraud-by-hindsight when plaintiffs allege that the company failed to take into account information *that was available to it at the time that the company issued the incorrect statements or omissions*.").

controlled its employee Ms. DeVries, who signed the Registration Statement at Cogency's behest, Cogency's argument fails. *See* ECF 96 at 3.

### F.  Plaintiff Has Adequately Pled Scienter

#### 1.  Applicable Pleading Standard

To plead a §10(b) claim, a plaintiff must "state with particularity facts giving rise to a strong inference" of scienter, *i.e.*, that the defendant "either knew the statement was false or was reckless in disregarding a substantial risk that it was false." *Makor Issues & Rts., Ltd. v. Tellabs Inc.*, 513 F.3d 702, 704 (7th Cir. 2008). The scienter requirement is satisfied where a complaint alleges fact showing either (i) "a motive and opportunity to commit the fraud;" or (ii) "strong circumstantial evidence of conscious misbehavior or recklessness." *Employees' Ret. Sys. of Gov't of the Virgin Islands v. Blanford*, 794 F.3d 297, 306 (2d Cir. 2015). With respect to the latter method, "[p]lausible allegations that a defendant 'knew facts or had access to information suggesting that their public statements were not accurate' supports a culpable inference of conscious misbehavior or recklessness." *In re Romeo Power Inc. Sec. Litig.*, 2022 WL 1806303, at *4 (S.D.N.Y. June 2, 2022) (quoting *Set Cap. LLC v. Credit Suisse Grp., AG*, 996 F. 3d 64, 79 (2d Cir. 2021)). All that is required is that Plaintiff's allegations collectively raise "an inference at least as likely as [any] competing inferences." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 324 n.5 (2007).

#### 2.  Plaintiff Adequately Alleges Strong Circumstantial Evidence of Recklessness of Conscious Misbehavior

The Complaint pleads scienter through facts giving rise to a strong inference of recklessness or conscious misbehavior. Specifically, the Complaint alleges that Defendants "knew facts or had access to information suggesting that their public statements [in the Registration Statement] were not accurate," *see Set Cap. LLC*, 996 F. 3d at 79 – namely, that Defendants were

aware of, but failed to disclose, the fair market value at issuance and the effect of the full exercise on the financial statements of the Series F Warrant, the Q4 2020 massive decline in customer retention and the striking increase in unpaid accounts. *See Yannes*, 2021 WL 2555437, at *7 (holding that defendants' subsequent admission of facts that were previously known to them and that were contrary to their class period statements adequately pled scienter); *In re Longwei Petroleum Inv. Holding Ltd. Sec. Litig.*, 2014 WL 285103, at *4 (S.D.N.Y. Jan. 27, 2014); *Dobina v. Weatherford Int'l Ltd.*, 909 F. Supp. 2d 228, 244-45 (S.D.N.Y. 2012).

Defendants primarily argue that Plaintiff's scienter allegations fail because the Complaint does not identify "specific instances" where the omitted information was reported directly to the individual Exchange Act Defendants, *i.e.*, Cloopen's CEO (Changxun Sun) and CFO (Yipend Li). *See* ECF 93 at 43-35. Defendants are wrong. Although facts demonstrating a defendant's direct receipt of contradictory information is one way of establishing knowledge, there are numerous other bases for inferring the individual Exchange Act Defendants' awareness of such information, as alleged here.

*First*, the fact that Defendant Sun executed the Series F Warrant on Cloopen's behalf provides strong circumstantial evidence that he was knowledgeable of the details of that transaction, including the fair market value Cloopen assigned to that Warrant in November 2020. *See* Declaration of Barbara Podell, Ex. 2 at 16. *See also Jakubiak v. Quantumscape Corp.*, 2021 WL 5331722, at *4 (S.D.N.Y. Nov 16, 2021) (holding that plaintiffs pled corporate executives' scienter where those executives entered into the warrant agreement whose terms were allegedly misrepresented in the accompanying registration statement); *see also City of Warren Police & Fire Ret. Sys. v World Wrestling Entertainment Inc.*, 477 F. Supp. 3d 123 (S.D.N.Y. 2020) (given importance of contract negotiated by the corporate defendant, the individual defendants – namely,

24

the corporate defendants CEO and Co-Presidents – "either knew or recklessly disregarded [the omitted] information" regarding the transaction).

Similarly, because the fair market value Cloopen assigned to the Series F Warrant at issuance was a determination that ultimately had to be approved (if not actually set) by Cloopen's CFO, it is inconceivable that Defendant Li was unaware of that information, especially when the exercise of the Warrant on January 7, 2021 contributed materially in a staggering 466% increase in Cloopen's year-over-year net losses. ¶¶ 4, 78-81. *See also, City of Warren*, 477 F. Supp. 3d at 136 ("it is virtually inconceivable that the CEO and Co-Presidents of [the corporate defendant] would not have been aware of the formal termination by the [corporate defendant] of this important contract"); *In re Aphira, Inc. Sec. Litig.*, 2020 WL 5819548, at \*9 (S.D.N.Y. Sept. 30, 2020) ("it is at least as compelling an inference" that senior officers were knowledgeable of "critical" information regarding whether key assets "were operational"); *In re General Elec. Co. Sec. Litig.*, 856 F. Supp. 2d 645, 660 (S.D.N.Y. 2012) ("It is highly implausible that [Defendant's] CFO would be ignorant of basic facts . . . about the quality of roughly one-third of [Defendant's] assets."); *Longwei Petroleum*, 2014 WL 285103, at \*4 ("At the very least, [the CFO's] role in financial reporting should have alerted him to [the corporate defendant's] sudden rise in revenues and history of inadequate financial controls . . . .").

Defendants would have this Court believe that the individual Exchange Defendants were aware of the full exercise of the Series F Warrant in January 2021 – which was reported in the Registration that they signed – but were simultaneously unaware of the fair market value Cloopen (through its officers) assigned to that Warrant months earlier in November 2020 (not to mention the massive resulting loss from the Warrant's exercise). While the Court is required to weigh *plausible* competing inferences, it need not indulge fantasy. *See, e.g.*, *In re Vale S.A. Sec. Litig.*,

2017 WL 1102666, at *33 (S.D.N.Y. Mar. 23, 2017) (rejecting defendants' "illogical premise that [the corporate defendant's] chief financial officer was unaware of a key provision in [a] contract . . . in advance of a conference call with analysts and investors that" directly related to that contract).

*Second*, corporate officers are presumed to be knowledgeable of the matters on which they choose to speak. *See In re Romeo Power*, 2022 WL 1806303, at *4; *In re Nielsen Holdings PLC Sec. Litig.*, 510 F. Supp. 3d 217, 237 (S.D.N.Y. 2021) (collecting cases); *In re Vale S.A. Sec. Litig.*, 2017 WL 1102666, at *33. Here, Defendants Sun and Li signed the Registration Statement, which spoke at length about the Series F Warrant, Cloopen's customer retention and its accounts receivables – particularly in "Management's Discussion and Analysis of Financial Condition and Results of Operations," ECF 94-1 at 74- 93, which supports the inference that they were then aware of the omitted information concerning those matters.

*Third*, a strong inference of scienter is further supported by the fact that Defendants' misrepresentations concern Cloopen's core operations. *See Yannes*, 2021 WL 2555437, at *5 ("[A]t the very least, the [core operations] doctrine, can provide supplemental support for allegations of scienter . . . ."). Indeed, Defendants themselves have described Cloopen's dollar-based net customer retention rate as a "Key Operating Metric." *See e.g.*, ¶¶ 8, 54; ECF 94-1 at 12.

*Fourth*, the magnitude of the fraud supports a strong inference of scienter. *See Katz v. Image Innovations Holdings, Inc.*, 542 F. Supp. 2d 269, 273 (S.D.N.Y. 2008) (Koeltl, J.) ("[T]he magnitude of the alleged fraud provides some additional circumstantial evidence of scienter."); *see also In re Pareteum Sec. Litig.*, 2021 WL 3540779, at *17 (S.D.N.Y. Aug. 11, 2021) ("the size of the alleged fraud can be relevant to the scienter inquiry") (internal quotation marks omitted); *In re Salix Pharm., Ltd.*, 2016 WL 1629341, at *16 ("The magnitude of Defendants' alleged fraud and the fact that it involved the core operations of [the defendant company's] business also support

26

a strong inference of scienter.") (collecting cases). As noted above, the exercise of the Series F Warrant contributed to Cloopen's year-over-year 466% increase in net losses, while Cloopen's "Key Operating Metric" dollar-based net customer retention rate plummeted by more than 30% percent during Q4 2020. ¶¶ 4-9.

*Fifth*, assuming *arguendo* the Complaint failed to allege scienter with respect to Defendants Sun or Li, it nonetheless has sufficiently alleged Cloopen's corporate scienter. *See Lea v. TAL Educ. Grp.*, 837 Fed. App'x 20, 27 (2d Cir. 2020) ("emphasiz[ing] that, when the magnitude of the fraud is 'dramatic,' it is possible 'to raise the required inference with regard to a corporate defendant without doing so with regard to a specific individual defendant'") (quoting *Teamsters Local 445 Freight Div. Pension Fund v. Dynex Cap. Inc.*, 531 F.3d 190, 195-96 (2d Cir. 2008)). Indeed, Defendants cannot seriously contend that, for example, the Registration Statement's misleading discussion of the Series F Warrant was not approved *by a single corporate officer* whose scienter can be imputed to Cloopen. *See generally Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 177 (2d Cir. 2015) (corporate scienter pled where the challenged "statements 'would have been approved by corporate officials sufficiently knowledgeable about the company to know' that those statements were misleading") (quoting *Dynex*, 531 F.3d at 195–96).

*Finally*, Defendants spend considerable time arguing that the numerous damning post-IPO developments – such as the resignation of Cloopen's external auditor and two of its board members, Cloopen's formation of an independent special committee to investigate employee misconduct and transaction irregularities and its receipt of a non-compliance letter from the SEC, *see* ¶¶ 125-26, do not support an inference of scienter. *See* ECF 93 at 31, 35-36. But, as the above analysis demonstrates, Plaintiff has pled a strong inference of scienter *regardless* of whether those

27

post-IPO developments are considered. In any event, those developments, at a minimum, supplement Plaintiff's independently sufficient scienter allegations. *See Yannes*, 2021 WL 2555437, at *6 ("the timing and circumstances of resignations . . . can add to a pleading of circumstantial evidence of fraud"); *Vanderhoef v. China Auto Logistics, Inc.*, 2021 WL 3260849, at *5 (D.N.J. July 30, 2021) (depending on the circumstances, resignation of external auditor can support inference of scienter).

### G.      Plaintiff Has Sufficiently Pled Control Person Liability

Contrary to Cloopen's contention, Plaintiff has alleged underlying securities violations to support its claims for control person liability under Section 20(a) of the Exchange Act. Similarly, the Complaint sufficiently alleges the Exchange Act Defendants' "culpable participation" under Section 20(a) for the same reasons that it adequately pleads their scienter. *See* ¶¶ 189-95.

## IV.    CONCLUSION

Plaintiff respectfully requests that Defendants' motions to dismiss be dismissed in their entirety.

Dated: August 15, 2022                    Respectfully submitted,

                                          **KIRBY McINERNEY LLP**

                                          /s/ *Ira M. Press*
                                          Ira M. Press
                                          Thomas W. Elrod
                                          250 Park Avenue, Suite 820
                                          New York, NY 10177
                                          Tel: (212) 371-6600
                                          Email: ipress@kmllp.com
                                                  telrod@kmllp.com


                                          *Local Counsel for Court Appointed Lead Plaintiff*
                                          *Guozhang Wang and Proposed Local Counsel for*
                                          *the Class*

28

**BERGER MONTAGUE PC**

Michael Dell'Angelo
Barbara Podell
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel: (215) 875-3000
Email: mdellangelo@bm.net
        bpodell@bm.net

*Counsel for Court Appointed Lead Plaintiff
Guozhang Wang and Proposed Lead Counsel for
the Class*

29

## CERTIFICATE OF SERVICE

I hereby certify that on August 15, 2022 a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

*/s/ Ira M. Press*
Ira M. Press

## CERTIFICATE OF COMPLIANCE

Pursuant to Section II.D of the Court's Individual Practices and the Court's Order at ECF No. 90, the undersigned certifies that this brief contains 8,498 words and complies with the Court's formatting rules.

*/s/ Ira M. Press*
Ira M. Press