**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| BOYAN DONG, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>CLOOPEN GROUP HOLDING LIMITED, CHANGXUN SUN, YIPENG LI, KUI ZHOU, QINGSHENG ZHENG, XIAODONG LIANG, ZI YANG, MING LIAO, FENG ZHU, LOK YAN HUI, JIANHONG ZHOU, CHING CHIU, XIEGANG XIONG, CHENG LUO, YUNHAO LIU, COGENCY GLOBAL INC., COLLEEN A. DEVRIES, GOLDMAN SACHS (ASIA) L.L.C., CITIGROUP GLOBAL MARKETS INC., CHINA INTERNATIONAL CAPITAL CORPORATION HONG KONG SECURITIES LIMITED, TIGER BROKERS (NZ) LIMITED, and FUTU INC.,<br><br>Defendants. | Case No. 1:21-cv-10610-JGK |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT
CLOOPEN GROUP HOLDING LIMITED'S MOTION TO DISMISS
THE AMENDED CLASS ACTION COMPLAINT**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ...........................................................................................................................1

ARGUMENT .................................................................................................................................1

I.      PLAINTIFF MUST BUT FAILS TO SATISFY RULE 9(B) ............................................1

II.     PLAINTIFF HAS NOT IDENTIFIED A DUTY TO DISCLOSE REGARDING
THE SERIES F WARRANT .........................................................................................2

III.    PLAINTIFF FAILS TO IDENTIFY A DUTY TO DISCLOSE Q4 2020
METRICS OR ALLEGE THAT THEY RENDERED ANY STATEMENT
ACTIONABLE ............................................................................................................4

IV.    STATEMENTS ARE NONACTIONABLE OPINIONS, CORPORATE
OPTIMISM, OR FORWARD-LOOKING ....................................................................4

V.     POST-IPO DEVELOPMENTS DO NOT ESTABLISH FALSITY ..................................6

VI.    PLAINTIFF FAILS TO PLEAD A VIOLATION OF ITEMS 303 OR 105 ......................6

VII.   THE SECTION 10(B) CLAIM INDEPENDENTLY FAILS .............................................7

CONCLUSION...............................................................................................................................10

CERTIFICATE OF COMPLIANCE...............................................................................................11

i

## TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Caiafa v. Sea Containers Ltd.*,
     331 F. App'x 14 (2d Cir. 2009) ................................................................................1, 2

*City of Coral Springs Police Officers' Ret. Plan v. Farfetch Ltd.*,
     565 F. Supp. 3d 478 (S.D.N.Y. 2021)......................................................................1, 2

*City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*,
     752 F.3d 173 (2d Cir. 2014).........................................................................................1

*City of Omaha, Neb. Civilian Emps.' Ret. Sys. v. CBS Corp.*,
     679 F.3d 64 (2d Cir. 2012)............................................................................................3

*Doscher v. Sobel & Co.*,
     2015 WL 774695 (S.D.N.Y. Feb. 11, 2015).................................................................3

*ECA, Loc. 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*,
     553 F.3d 187 (2d Cir. 2009)..........................................................................................5

*Fadem v. Ford Motor Co.*,
     352 F. Supp. 2d 501 (S.D.N.Y.),
     *aff'd*, 157 F. App'x 398 (2d Cir. 2005)........................................................................2

*In re Chembio Diagnostics, Inc. Sec. Litig.*,
     2022 WL 541891 (E.D.N.Y. Feb. 23, 2022)..................................................................9

*In re Chi. Bridge & Iron Co. N.V. Sec. Litig.*,
     2018 WL 2382600 (S.D.N.Y. May 24, 2018) ..............................................................5

*In re Express Scripts Holding Co. Sec. Litig.*,
     2018 WL 2324065 (S.D.N.Y. May 22, 2018),
     *aff'd*, 773 F. App'x 9 (2d Cir. 2019)............................................................................3

*In re Facebook, Inc. IPO Sec. & Derivative Litig.*,
     986 F. Supp. 2d 487 (S.D.N.Y. 2013)........................................................................6, 7

*In re HEXO Corp. Sec. Litig.*,
     524 F. Supp. 3d 283 (S.D.N.Y. 2021)...........................................................................2

*In re Pareteum Sec. Litig.*,
     2021 WL 3540779 (S.D.N.Y. Aug. 11, 2021)...............................................................8

*In re Perrigo Co. PLC Sec. Litig.*,
    435 F. Supp. 3d 571 (S.D.N.Y. 2020)................................................................3, 7

*In re Salix Pharms., Ltd.*,
    2016 WL 1629341 (S.D.N.Y. Apr. 22, 2016)......................................................8

*In re Skechers USA, Inc. Sec. Litig.*,
    444 F. Supp. 3d 498 (S.D.N.Y. 2020)..............................................................8, 9

*In re SunEdison, Inc. Sec. Litig.*,
    300 F. Supp. 3d 444 (S.D.N.Y. 2018)................................................................7

*In re Synchrony Fin. Sec. Litig.*,
    988 F.3d 157 (2d Cir. 2021).............................................................................5

*Jackson v. Abernathy*,
    960 F.3d 94 (2d Cir. 2020)...............................................................................9

*Katz v. Image Innovations Holdings, Inc.*,
    542 F. Supp. 2d 269 (S.D.N.Y. 2008)...............................................................8

*Lachman v. Revlon, Inc.*,
    487 F. Supp. 3d 111 (E.D.N.Y. 2020) ..............................................................3

*Lea v. TAL Educ. Grp.*,
    837 F. App'x 20 (2d Cir. 2020) .......................................................................9

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
    797 F.3d 160 (2d Cir. 2015).............................................................................9

*Rudman v. CHC Grp. Ltd.*,
    217 F. Supp. 3d 718 (S.D.N.Y. 2016)...............................................................5

*Williams v. Citigroup Inc.*,
    659 F.3d 208 (2d Cir. 2011).............................................................................2

*Woolgar v. Kingstone Cos.*,
    477 F. Supp. 3d 193 (S.D.N.Y. 2020)...............................................................8

*Yannes v. SCWorx Corp.*,
    2021 WL 2555437 (S.D.N.Y. June 21, 2021) ................................................6, 8

## <u>RULES</u>

Fed. R. Civ. P. 8.........................................................................................................2

Fed. R. Civ. P. 9(b) ..........................................................................................1, 2, 9

Fed. R. Civ. P. 12(b)(6)...............................................................................................2

**INTRODUCTION**

The Opposition confirms the Complaint does not state a claim.  Plaintiff fails to allege that Cloopen had a duty to disclose Q4 2020 metrics given the Registration Statement's robust disclosures and express limitation to Q3.  Plaintiff's attempt to raise unpled purported GAAP violations does not salvage this deficiency.  Moreover, many challenged statements are non-actionable and not rendered false or misleading by the alleged omissions.  Finally, although the Opposition attempts to introduce unpled allegations to save the Complaint's scienter deficiencies, the allegations remain too conclusory and insufficient to raise the requisite strong inference of scienter.

**ARGUMENT**

**I.    PLAINTIFF MUST BUT FAILS TO SATISFY RULE 9(B)**

Rule 9(b)'s heightened pleading standard applies because every statement and purported omission from the Registration Statement challenged under the Securities Act is challenged for the same reasons under the Exchange Act.  Mot. at 8.  Contrary to the Opposition (Opp. at 4), the Complaint cannot avoid Rule 9(b) through disclaimers or separate scienter allegations.  Mot. at 8-9, n.6.  The Court must "conduct a preliminary inquiry into whether plaintiffs' allegations are premised on fraud" to determine the pleading standard.  *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 183 (2d Cir. 2014) (applying Rule 9(b) where Sections 11 and 10(b) claims "are identical").

Plaintiff's assertion that Cloopen's authorities "*do not* involve complaints that wholly-segregated their scienter allegations from their Section 11 claims" (Opp. at 4-5) is inaccurate.  Most cases applied Rule 9(b) to Securities Act claims notwithstanding segregated allegations.  Mot. at 8-9 (including *Farfetch*, *Caiafa*, and *Evoqua*).  In *Farfetch*, despite separate sections and disclaimers, the court applied Rule 9(b) after finding "[e]very statement that [p]laintiffs allege to

1

be false or misleading under the Securities Act they also allege to be false and misleading for the same reasons under the Exchange Act." *City of Coral Springs Police Officers' Ret. Plan v. Farfetch Ltd.*, 565 F. Supp. 3d 478, 491 n.3 (S.D.N.Y. 2021); *see also In re HEXO Corp. Sec. Litig.*, 524 F. Supp. 3d 283, 299 n.17 (S.D.N.Y. 2021) (same); *Caiafa v. Sea Containers Ltd.*, 331 F. App'x 14, 16 (2d Cir. 2009) (applying Rule 9(b) despite separate scienter section).

This Court owes no deference to the parallel state court action as that motion to dismiss was decided under more lenient "notice pleading requirements[.]" Podell Decl., Ex. 1 at 10; *Williams v. Citigroup Inc.*, 659 F.3d 208, 215 n.4 (2d Cir. 2011) ("more lenient than the 'plausibility' standard applicable in federal courts").

Even if Rule 9(b) did not apply, Plaintiff's claims still fail under Rules 8 and 12(b)(6).

## II.     PLAINTIFF HAS NOT IDENTIFIED A DUTY TO DISCLOSE REGARDING THE SERIES F WARRANT

Cloopen was under no duty to disclose the fair value of the Series F Warrant, which was issued and exercised after the time-period for financial statements in the Registration Statement. Mot. at 11-12. Plaintiff argues that Cloopen should have disclosed the warrant's fair value based on Accounting Standards Codification ("ASC") 855. Opp. at 7-9. This argument fails.

*First*, ASC 855 is not mentioned in the Complaint. To the extent Plaintiff's claims are now premised on a purported violation of ASC 855, that is an impermissible amendment. *See Fadem v. Ford Motor Co.*, 352 F. Supp. 2d 501, 516 (S.D.N.Y.) ("It is long-standing precedent in this circuit that parties cannot amend their pleadings through issues raised solely in their briefs."), *aff'd*, 157 F. App'x 398 (2d Cir. 2005).

*Second*, even if the Complaint had cited ASC 855, no court has ever imposed securities liability based on this provision. This makes sense because ASC 855 provides no "bright line tests for determining which subsequent events require disclosure" and expressly delegates that

2

determination to the "judgment" of the reporting entity.  PwC, US Financial Statement Presentation Guide 28.6 (Nov. 29, 2021) (Opp. at 8); *see In re Perrigo Co. PLC Sec. Litig.*, 435 F. Supp. 3d 571, 581, 585-86 (S.D.N.Y. 2020) (dismissing Section 10(b) claim based in part on ASC 855; finding no scienter because "[a]s the Second Circuit has admonished, 'allegations of GAAP violations or accounting irregularities, standing alone, are insufficient to state a securities fraud claim.'  This is nowhere more true than where the application of GAAP to a particular set of circumstances requires the exercise of judgment, as it does here.") (citation omitted); *City of Omaha, Neb. Civilian Emps.' Ret. Sys. v. CBS Corp.*, 679 F.3d 64, 69 (2d Cir. 2012) (affirming dismissal because "plaintiffs here have at most pleaded defendants' failure to comply with [GAAP], rather than their commission of securities fraud"); *In re Express Scripts Holding Co. Sec. Litig.*, 2018 WL 2324065, at *8-9 (S.D.N.Y. May 22, 2018) (rejecting claims premised on GAAP violations), *aff'd*, 773 F. App'x 9 (2d Cir. 2019).

*Third*, the Complaint fails to identify how Cloopen's disclosures regarding the Series F Warrant—limited to a description of the warrant, aggregate principal amount and exercise price, rights of the warrant holder, and exercise date—created any duty to disclose the fair value. Plaintiff rests his omissions claim on the conclusory statement that the disclosures are "so incomplete as to mislead," Opp. at 10, but fails to point to any disclosure that is rendered materially misleading based on non-inclusion of the warrant's fair value.  *See, e.g.*, *Doscher v. Sobel & Co.*, 2015 WL 774695, at *4 (S.D.N.Y. Feb. 11, 2015) ("[Plaintiff] must 'specify a statement that is alleged to be materially misleading because of the information it omits.'") (citation omitted); *Lachman v. Revlon, Inc.*, 487 F. Supp. 3d 111, 129-30 (E.D.N.Y. 2020) (dismissing because statements were accurate despite alleged omission).  The Complaint also fails to explain how the alleged omission of fair value is material considering the information already disclosed that Cloopen had increasing warrant liabilities for a year leading to the IPO and

3

the method used to calculate the fair value, as well as the fair value of prior issued warrants.

Mot. at 11-12.

### III.    PLAINTIFF FAILS TO IDENTIFY A DUTY TO DISCLOSE Q4 2020 METRICS OR ALLEGE THAT THEY RENDERED ANY STATEMENT ACTIONABLE

The Registration Statement was expressly limited to Q3 2020 financials, which Plaintiff

does not challenge (Opp. at 12); Q4 financials had not been reported at the time of the IPO; and

Plaintiff has not shown that Cloopen had any duty to disclose financials for an unreleased

quarter.  Mot. at 9-10.  Instead, Plaintiff argues Q4 metrics should have been disclosed because

the alleged omissions were material and rendered statements "about customer retention and

expansion … so incomplete as to mislead."  Opp. at 2, 12-16.  But this misses the point, as

neither the Complaint nor the Opposition has shown that Cloopen was in a position to disclose

the dollar-based net customer retention rate or customer non-payment for Q4 since those results

had not been reported.  Mot. at 10; *cf.* Opp. at 11.

In any event, the Q4 metrics, including the 86.8% retention rate for FY2020, do not

render Cloopen's statements regarding strategies and customer retention false.  Mot. 13-16.

Cloopen never promised that its business strategy would succeed.  Mot. at 14.  Furthermore, the

retention rate only measures solutions offered on a recurring basis and does ***not*** measure

Cloopen's overall ability to generate revenue across its entire customer base; a short-term decline

in this metric does not indicate that Cloopen's business strategy was failing.  Mot. at 16.

### IV.    STATEMENTS ARE NONACTIONABLE OPINIONS, CORPORATE OPTIMISM, OR FORWARD-LOOKING

*First*, Plaintiff concedes that many challenged statements are classic opinions, and as

such, Plaintiff must show Cloopen "did not hold the belief professed, supplied untrue supporting

facts, or omitted information whose omission made the statement misleading."  Mot. at 17; Opp.

at 15.  Other than conclusory assertions that Cloopen "possessed" the "real facts" (Opp. at 15),

Plaintiff fails to identify any fact showing that Cloopen did not hold those opinions.

*Second*, many statements are non-actionable expressions of optimism.  Mot.

§(I)(B)(4)(c).  Plaintiff argues that these statements were "anchored in misrepresentations of

existing facts," but fails to identify which existing facts were misrepresented.  Opp. at 16-17.

Cloopen's beliefs that its customers are "loyal" and "tend to stay with us," and that it could

maintain a "steady revenue stream from repeat customers" are not contradicted by any alleged

facts.  Mot. at 19.  The mere allegation of a single-quarter, short-term decline in customer

retention for part of Cloopen's business does not imply that Cloopen's optimistic beliefs were

not honestly held.  Mot. at 16; *see also id.* at 22.

Plaintiff's authorities (Opp. at 16-17) support Cloopen's position.  *In re Synchrony Fin.

Sec. Litig.*, 988 F.3d 157, 170 (2d Cir. 2021) (dismissing "stable asset quality" as puffery

because companies are "permitted 'to be confident about' [their] business model at [such a] level

of generality") (citation omitted); *ECA, Loc. 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan

Chase Co.*, 553 F.3d 187, 205-06 (2d Cir. 2009) (dismissing as puffery statements that company

had "highly disciplined" risk management processes and would "continue to reposition and

strengthen [its] franchises with a focus on financial discipline"); *Rudman v. CHC Grp. Ltd.*, 217

F. Supp. 3d 718, 728 (S.D.N.Y. 2016) (dismissing as puffery statements regarding "strong"

customer relationships).  In *In re Chicago Bridge & Iron Co. N.V. Securities Litigation*, the court

held that representations that the company "continue[s] to make progress and substantial

progress" on a project were not puffery because they were ***missing qualifiers*** like "aims to,"

"wants to," or "should."  2018 WL 2382600, at *8 (S.D.N.Y. May 24, 2018).  By contrast,

Cloopen's statements contain qualifiers or are "too generic" or "vague" to be actionable.  Opp. at

16-17; Mot. at 19.

5

*Third*, contrary to Plaintiff's claims (Opp. at 17), Cloopen's forward-looking statements do not contain representations of present fact, are accordingly protected by the bespeaks caution doctrine, and were not rendered misleading by Q4 metrics.  Mot. at 20.

## V.     POST-IPO DEVELOPMENTS DO NOT ESTABLISH FALSITY

Plaintiff admits he is not challenging post-IPO disclosures, but rather relies on them as support for his challenges to the Registration Statement.  Opp. at 21-22.  This reliance is misplaced as the post-IPO developments are insufficient to establish falsity as of the IPO.  *See* Mot. at 23.

Plaintiff's authority is inapposite.  In *Yannes v. SCWorx Corp.*, the defendants issued multiple statements about SCWorx's deal to sell COVID-19 tests, notwithstanding public reports questioning whether SCWorx's supplier could fulfill its terms.  2021 WL 2555437, at *2 (S.D.N.Y. June 21, 2021).  The contemporaneous public reports established the falsity of the defendants' statements, supplemented by SCWorx's 8-K issued less than three weeks later admitting that SCWorx could not fulfill the deal.  *Id.* at *7.  Here, developments—more than a year after the IPO—do not accompany any contemporaneous evidence as of the IPO.  Mot. at 23.

## VI.     PLAINTIFF FAILS TO PLEAD A VIOLATION OF ITEMS 303 OR 105

Because none of the alleged omissions are actionable, Items 303 or 105 cannot save Plaintiff's deficient claims.  Mot. at 22.  Further, Cloopen demonstrated that in accord with Item 303, the Registration Statement disclosed the supposedly omitted "trends."  *Id.* at 3-4, 22.  Plaintiff points to no authority to support that Cloopen had any further obligation to disclose based on the rate at which the metrics changed between Q3 and Q4 2020.

Plaintiff makes no attempt to distinguish Cloopen's authorities and misdirects to an inapposite case (Opp. at 21).  In *In re Facebook, Inc. IPO Securities & Derivative Litigation*, the allegations showed Facebook deliberately hid an intra-quarter material trend it had identified

while providing "emergency" disclosures to pass onto only the "most important potential investors."  986 F. Supp. 2d 487, 502-03, 512-14 (S.D.N.Y. 2013).  Here, the Complaint is devoid of allegations that Cloopen had become aware of any material trend prior to the IPO, let alone made selective disclosures to the exclusion of the broader public.

## VII.    THE SECTION 10(B) CLAIM INDEPENDENTLY FAILS

Plaintiff concedes that the Complaint fails to identify any motive, opportunity, or specific instances where contrary information was reported to Messrs. Sun or Li.  Opp. at 23-28; Mot. at 25-26.  Plaintiff's attempts to plead scienter through other theories fail.

*First*, as to the Series F Warrant, that Mr. Sun executed the warrant on Cloopen's behalf is only sufficient to show that he was aware of the warrant and its key terms.  It sheds no light on whether he had specific knowledge of the fair value accounting calculation or that not disclosing that fair value was misleading.  Mot. at 27; *see In re SunEdison, Inc. Sec. Litig.*, 300 F. Supp. 3d 444, 494-95 (S.D.N.Y. 2018) ("To adequately allege scienter for an omission, the Complaint must include facts showing 'at least a reckless disregard of a known or obvious duty to disclose.'"  Mere knowledge about a given fact "does not go toward proving that an omission was recklessly made") (citation omitted).[1]  Even if Cloopen was required to disclose the fair value, the nondisclosure alone is insufficient to infer scienter.  *See Perrigo*, 435 F. Supp. 3d at 585 (no scienter inferred from purported ASC violations).  The Complaint is devoid of any allegation showing that any Exchange Act Defendant acted with scienter in the alleged omission of the fair value.  Mot. at 26-27.

---

[1] Plaintiff's cases (Opp. at 24) dealt with a misrepresentation or nondisclosure of agreements or their key terms, not knowledge as to accounting treatment of those agreements.

7

*Second*, neither the core operations nor magnitude of the fraud doctrines establishes scienter.  Plaintiff's cases (Opp. at 26-27) recognize that these doctrines can only "buttress [other] allegations of scienter[.]"  *In re Salix Pharms., Ltd.*, 2016 WL 1629341, at *16 (S.D.N.Y. Apr. 22, 2016) ("Plaintiffs cannot plead scienter based solely on the magnitude of the fraud or . . . core operations[.]").  In those cases, unlike here, the plaintiffs sufficiently pled that the defendants were aware of or had access to contrary information.  *Id.* at *14 ("specific reports"); *Katz v. Image Innovations Holdings, Inc.*, 542 F. Supp. 2d 269, 273 (S.D.N.Y. 2008) (defendant helped generate and reviewed fraudulent invoices); *In re Pareteum Sec. Litig.*, 2021 WL 3540779, at *16 (S.D.N.Y. Aug. 11, 2021) (defendants informed of contrary information "[a]t the same time" as "firm and rosy" representations); *Yannes*, 2021 WL 2555437, at *4-5 (contrary information "publicly available").[2]

Courts also routinely refuse to apply core operations based solely on challenges to a company's accounting practices.  *See In re Skechers USA, Inc. Sec. Litig.*, 444 F. Supp. 3d 498, 528 (S.D.N.Y. 2020) (rejecting that "subject of the alleged fraud—SG&A expenses—is so fundamental to the [c]ompany's operations that the [i]ndividual [d]efendants' knowledge about it should virtually be presumed"); *Woolgar v. Kingstone Cos.*, 477 F. Supp. 3d 193, 239 (S.D.N.Y. 2020) (rejecting core operations based on argument that challenged statements "pertained to key accounting metrics and underwriting, the core of any insurance company").

*Third*, after failing to plead scienter as to Messrs. Sun or Li, the Complaint fails to plead scienter as to Cloopen.  Mot. at 28.  The Opposition invokes the corporate scienter doctrine

---

[2] Unlike here, those cases involved unambiguous fraudulent conduct.  *E.g.*, *Katz*, 542 F. Supp. 2d at 273 (majority of sales were "fictitious"); *Salix*, 2016 WL 1629341, at *16 (hidden inventory of three times what was publicly disclosed).

based on the unpled assertion that the Series F Warrant disclosure must have been approved by a corporate officer whose scienter can be imputed to Cloopen.  Opp. at 27.  Notwithstanding that the Complaint's scienter section is devoid of *any* factual allegations to support this, corporate scienter cannot be pled through a conclusory allegation.  *See Jackson v. Abernathy*, 960 F.3d 94, 99 (2d Cir. 2020) ("naked assertion" that "senior officers must have known that the challenged statements were false" because they were about a "key product" is "plainly insufficient to raise a strong inference of collective corporate scienter"); *Skechers*, 444 F. Supp. 3d at 529 (rejecting "conclusory allegations" and foreclosing finding any official was "sufficiently knowledgeable" where plaintiffs failed to identify any report containing contrary information).

Plaintiff's cases applying the corporate scienter doctrine did so based on nonconclusory allegations that specific senior officials acted with requisite scienter, which are missing here. Opp. at 27; *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 177 (2d Cir. 2015) (emails involving senior officials); *Lea v. TAL Educ. Grp.*, 837 F. App'x 20, 27 (2d Cir. 2020) ("direct participation by individual defendants" in at-issue fraudulent transactions).

*Finally*, as Plaintiff recognizes, post-IPO developments cannot save deficient scienter allegations.  Opp. at 27-28; Mot. at 28.[3]

---

[3] Because the Securities Act claims sound in fraud, they should also be dismissed for failure to plead scienter.  *In re Chembio Diagnostics, Inc. Sec. Litig.*, 2022 WL 541891, at *14 (E.D.N.Y. Feb. 23, 2022) (dismissing Section 11 claim under Rule 9(b) where intertwined Section 10(b) claim was dismissed on scienter grounds).

## CONCLUSION

The Complaint should be dismissed with prejudice.[4]


Dated: September 14, 2022          Respectfully submitted,

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

*s/ Sheryl Shapiro Bassin*
Sheryl Shapiro Bassin
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Telephone: (212) 999-5800
Facsimile: (212) 999-5899
Email: sbassin@wsgr.com

Ignacio E. Salceda (admitted *pro hac vice*)
650 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 493-9300
Facsimile: (650) 493-6811
Email: ISalceda@wsgr.com

*Counsel for Defendant Cloopen Group Holding Limited*

---

[4] As illustrated by the case both parties cite, dismissal for insufficient pleading is proper even for unserved defendants.  Mot. at 6, n.5; Opp. at 1, n.3.

**CERTIFICATE OF COMPLIANCE**

Pursuant to Section II.D of the Court's Individual Practices, the undersigned certifies that this reply brief contains 2,800 words and complies with the Court's formatting rules.

Dated: September 14, 2022

Respectfully submitted,

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

*s/ Sheryl Shapiro Bassin*
Sheryl Shapiro Bassin
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Telephone: (212) 999-5800
Facsimile: (212) 999-5899
Email: sbassin@wsgr.com

Ignacio E. Salceda (admitted *pro hac vice*)
650 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 493-9300
Facsimile: (650) 493-6811
Email: ISalceda@wsgr.com

*Counsel for Defendant Cloopen Group Holding Limited*

11